## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **Pierre Investments, Inc.** | : | |
| **2050 N. Stemmons Frwy, Suite 7250** | : | **CASE NO: 3:22-cv-00932** |
| **Dallas, Texas 75207** | : | |
| | : | |
| **Pierre Investments, Inc.** | : | **JUDGE James R. Knepp** |
| **d/b/a Gehard Luxury Homes** | : | |
| **2010 Scarlet Oak Drive** | : | |
| **Richardson, Texas 75081** | : | |
| | : | **COMPLAINT:** |
| **Ken Gazian** | : | **LEGAL MALPRACTICE** |
| **2010 Scarlet Oak Drive** | : | **(Jury Demand Endorsed Hereon)** |
| **Richardson, Texas 75081** | : | |
| **Plaintiffs,** | : | CYNTHIA M. RODGERS (0099896) |
| **v.** | | Law Office of Cynthia M. Rodgers, L.L.C |
| | : | 605 Cass St., P.O. Box 1 |
| **Anspach Meeks Ellenberger, LLP** | | Dresden, Ohio 43821 |
| | : | (740) 575-6870 Telephone |
| **c/o Robert M. Anspach, Statutory Agent** | | (740) 740-2484- Facsimile |
| | : | Email: cynthia@cynthiarodgerslaw.com |
| **25 South Huron Street** | | *Attorney for Plaintiffs* |
| | : | |
| **Toledo, Ohio 43604** | | |

1

|                                              |     |
|----------------------------------------------|-----|
| **and**                                      | **:** |
| **Anspach Law**                              | **:** |
| **c/o Robert M. Anspach, Statutory Agent**   | **:** |
| **25 South Huron Street**                    | **:** |
| **Toledo, Ohio 43604**                       | **:** |
| **and**                                      | **:** |
| **Kent D. Riesen**                           | **:** |
| **25 South Huron Street**                    | **:** |
| **Toledo, Ohio 43604**                       | **:** |
| **Defendants.**                              | **:** |

NOW COMES the Plaintiffs, Pierre Investments, Inc. ("Pierre"), Pierre Investments, Inc. d/b/a Gehard Luxury Homes ("Gehard"), and Ken Gazian ("Gazian") (collectively, "Plaintiffs") and by and through undersigned counsel, Cynthia M. Rodgers and the firm Law Office of Cynthia M. Rodgers, L.L.C. and for its Complaint against the above-named Defendants, hereby state and allege as follows:

## JURISDICTION AND VENUE

1.  Jurisdiction is founded upon 28 U.S.C. § 1332 due to diversity of citizenship because Plaintiffs are citizens of the State of Texas and the Defendant Anspach Meeks Ellenberger LLP is a limited liability partnership with an office in Toledo, Ohio with partners located in

Toledo, Columbus and West Virginia. The partnership is sued in its firm name and defendants are citizens of Ohio. The amount in controversy exceeds $75,000.

2. Venue is proper in this Court pursuant to U.S.C. § 1391(b)(2) as most or all Defendants reside or have a place of business within this Judicial District, and all or substantially all of the events that give rise to the claims in this action occurred in Ohio.

## Parties

3. The Plaintiff, Pierre Investments, Inc ("Pierre") is a Texas Corporation based in Dallas County, Texas and has as its agent Ken Gazian.

4. The Plaintiff Pierre Investments, Inc. d/b/a Gehard Luxury Homes ("Gehard") is a Texas based business located at 2010 Scarlet Oak Drive, Richardson, Texas 75081.

5. The Plaintiff Ken Gazian ("Gazian") is an individual residing in Dallas County, Texas.

6. Defendant Anspach Meeks Ellenberger, L.L.P. ("Anspach") is an Ohio limited liability partnership with its principal place of business in Toledo, Ohio and has as its agent Robert M. Anspach, 25 South Huron Street, Toledo, Ohio 43604. The law firm contracted to represent Pierre in its fraud matter, but its attorney provided defective representation in violation of obligations under the contract.

7. Defendant Anspach Law is the trade name registered by Anspach Meeks Ellenberger, LLC. Anspach Law has an office in Toledo which is the location from which legal services were provided. It has as its agent Robert M. Anspach, 25 South Huron Street, Toledo, Ohio 43604.

8. Defendant Kent D. Riesen, Esq. ("Riesen") is a licensed legal professional at Anspach office located in Toledo, Ohio.  Plaintiffs are asserting claims, including a professional liability claim against Defendants for legal malpractice and breach of contract. At all pertinent times, Riesen held himself out as possessing training and skill as a legal professional, and devoted

3

his professional attention to employing those skills for a fee. Defendants contracted to represent Pierre in civil litigation matters of *Pierre Investments, Inc. v. CLS Capital Group Inc et al.*

## **FACTUAL BACKGROUND**

9. On or about November 5, 2018, Pierre entered into a Loan Commitment Agreement with lender, CLS Capital Group Inc. ("Exhibit 1")

10. At this time, Pierre was represented by Texas Attorney Walter Musgrove, III Esq. ("Musgrove").

11. The Loan Commitment Agreement constituted a final agreement between the parties regarding a ten million ($10,000,000) dollars.

12. Prior to executing the Agreement, CLS Capital Group Inc approved the loan based on the executive summary for the development of luxury homes on a ten-acre site that was provided by Pierre.

13. Under the Agreement, Plaintiffs had the opportunity to make at least three million ($3,000,000) dollars profit.

14. Under the Agreement, Plaintiffs had the opportunity to market and sell the constructed homes and generate a 3% real estate commission based on the sale price of those homes.

15. Prior to signing the Agreement, Plaintiffs contacted Ohio attorneys Brandon Rehkopf, Esq. and Mark Mockensturm, Esq.  of Mockensturm, Ltd regarding their past experience with CLS Capital Group Inc and obtained assurance that CLS Capital Group Inc was a good company and capable of lending ten million dollars ($10,000,000).

16. On or about Saturday, November 10, 2018, as per the Agreement Pierre paid $75,000 to CLS Capital Group Inc by mailing two cashiers checks. (Exhibit 2).

4

17. On or about Tuesday, November 13, 2018, Plaintiffs received an email confirming the receipt of the $75,000 commitment fee.

18. From about November 13, 2018 to around February 2019, CLS Capital Group Inc fabricated reasons not to perform its commitment to lend ten million dollars ($10,000,000).

19. On or about February 2019, Pierre suspected fraud.

20. On or about April 16, 2019, Plaintiffs telephoned Riesen of Anspach to discuss fraud claims against CLS Capital Group Inc and its attorneys.

21. In August 2019, Musgrove provided an affidavit asserting frauds.

22. Defendants provided copies of website address, links and screenshots showing telecommunication fraud.

23. Defendants failed to subpoena documents from MFG regarding the screenshot of the $250 million dollar transaction with CLS Capital Group Inc.

24. Defendants provided copy of the police report and video recording made by Detective Karrie Williams in which Williams identified telecommunications fraud.

25. Defendants failed to investigate and add a claim for telecommunication fraud after Gazian provided proof that Uballe used the internet to entice Plaintiffs to send funds under the guise that Uballe and or CLS Capital Group Inc was a lender.

26. On or about October 24, 2019, Plaintiffs provided a copy of the Loan Commitment Agreement to Defendants.

27. In addition, Plaintiffs provided the entire file which contained email communications between CLS Capital Group Inc and Plaintiffs, along with a copy of the *front* of both cashier's checks and copies of other documents to prove fraud.

28. At no time while handling the case did defendants complete a thorough investigation to determine if CLS Capital Group Inc was registered to do business in the state of Delaware.

29. At no time while handling the case did defendants complete a thorough investigation to determine if CLS Capital Group Inc was registered to do business in the state of Ohio.

30. On or about October 28, 2019, Anspach through attorney Riesen presented and finalized the Contingent Fee Agreement. (Exhibit 3)

31. In preparation of the filing of the lawsuit, Defendants failed to advise Plaintiffs that Gehard and Gazian could be named as additional plaintiffs due to lost opportunities, lost earnings, lost profits, and lost real estate commissions and other damages.

32. On or about October 28, 2019, Defendants filed the lawsuit against CLS Capital Group Inc and others in Lucas County Common Pleas Court. (Case No CI-2019-04258 as *Pierre Investments, Inc. v. CLS Capital Group Inc.)*

33. The Complaint contained the following claims: Count I: Fraud/Misrepresentation; Count II: Legal Malpractice; Count III: Breach of Contract; Count IV: Unjust Enrichment; Count V: Promissory Estoppel; Count VI: Deceptive Trade Practices.

34. All filings in the case are hereby incorporated into this Complaint.

35. Defendants failed to request and or obtain in discovery, any document confirming an attorney-client relationship between Mockensturm Ltd. and CLS Capital Group Inc.

36. Defendants failed to request and or obtain in discovery, any document proving Mockensturm's past experience closing and underwriting loans for CLS Capital Group Inc.

37. Defendants failed to obtain through discovery a certificate of good standing from the Secretary of State of Delaware and Ohio Secretary of State, which would have proven that

CLS Capital Group Inc was a non-existent corporation, void and not in good standing since 2012.

38. Defendants failed to investigate and obtain the proper service address for the agent of CLS Capital Group Inc which is the Delaware Secretary of State since CLS Capital Group Inc is defunct (Exhibit 4).

39. Defendants failed to obtain through discovery that Securities and Exchange Commission (SEC) shut down CLS Capital Group Inc in 2014. (Exhibit 5)

40. Defendants failed to obtain online 10K form from EDGAR as the SEC website, that would have shown that CLS Capital Group Inc only had $120 dollars in assets in the year prior to being suspended by the Delaware Secretary of State. (Exhibit 6)

41. Defendants failed to follow-up and request bank records of CLS Capital Group Inc after discovering in December 2020, that CLS Capital Group Inc did not have ten million ($10,000,000) dollars to lend Pierre. (Exhibit 7)

42. Defendants failed request in discovery the names of the proper agents and officers for CLS Capital Group Inc which could have been determined through a request for the corporate books and minutes.

43. Defendants failed to properly serve CLS Capital Group Inc through the Secretary of State of Delaware and failed to investigate the signature of the unknown person named Hannah that signed for the Complaint. (Exhibit 8)

44. Defendants failed to further investigate who Hannah was and if she was ever associated with CLS Capital Group Inc.

45. Defendants failed to investigate the status of CLS Capital Group Inc in Ohio as a foreign corporation by obtaining records from the Delaware SOS.

46. Defendants failed to investigate and discover that Reynaldo Uballe, Jr. ("Uballe") was not an officer (Chief Operating Officer "COO") of CLS Capital Group Inc. (Exhibit 4)

47. Defendants failed to file a separate claim of fraud against Mockensturm, Ltd with specificity in the Complaint.

48. Defendants failed to support the third-party claim for legal negligence against Mockensturm Ltd.

49. Defendants failed to evaluate the validity of the Assignment agreement prior to amending the complaint to add Comprehensive Lending Services Capital Group LLC. (Exhibit 9)

50. Defendants failed to support through relevant case law research the third-party legal malpractice claim made in paragraph 59 of the Amended Complaint and instead provided cases that do not support third-party legal malpractice claims. (_Shoemaker v. Gindlesberger_, 118 Ohio St.3d 226, 2008-Ohio-2012, 887 N.E.2d 1167, _Scholler v. Scholler_, 10 Ohio St.3d 98, 10 Ohio B, 426, 462 N.E.2d 158 (1984), paragraph one of the syllabus; _Simon v. Zipperstein_, 32 Ohio St.3d 74, 76, 512 N.E.2d 636 (1987).

51. Defendants failed to argue that there is no difference between a lender and a direct lender and as a result the court issued an Opinion and Judgment Entry adverse to Pierre. (Exhibit 10)

52. The Court dismissed the legal malpractice action, due to not meeting the first element and found that "it is clear that plaintiff's claim for legal malpractice fails to satisfy even the first element, [of legal malpractice], as there is no evidence or allegation to show the existence of an actionable attorney-client relationship." (Exhibit 10, p. 6).

53. Defendants failed to file an interlocutory appeal of the opinion and judgment entry filed September 10, 2020 and journalized on September 11, 2020.

54. Defendants neglected fraud claims against Mockensturm, Ltd and instead prioritized legal malpractice claim in hopes of getting paid from the malpractice insurance their insurance policy.

55. Defendants failed to allege in the Amended Complaint that CLS Capital Group Inc referred to underwriting strictly as "closing" the loan, instead of a process that would have required an Ohio underwriting license which Mockensturm Ltd does not possess.

56. Reisen failed to understand the requirements of underwriters and failed to verify whether anyone at Mockensturm Ltd had been licensed to perform such work as anticipated in the loan agreement.

57. Defendants failed to examine the deposition transcripts of Brandon, Uballe and Napper to discover and report perjury to the Court. For example, when Brandon stated under oath that CLS Capital Group Inc was not his client, that statement contradicted his earlier statement to Musgrove that the reason why he could not release the requested documents to Musgrove (as proof of past financial transactions with CLS Capital Group Inc) was based on attorney-client privilege.

58. Defendants failed to request a conference with the court that would have led to an order compelling Mockensturm Ltd. to produce documents to clarify whether or not CLS Capital Group Inc was its client.

59. Defendants failed to subpoena Fifth Third statements or request a conference with the court that would have led to an order compelling Uballe to produce 2018 bank statements after he testified that CLS Capital Group Inc did and did not have money in its bank account at the time of executing the loan commitment. (Exhibit 7)

60. Defendants failed to request a conference with the court that would have led to an order compelling Uballe to produce a digital copy of an unauthenticated email (dated 1/24/2019 that contained capitalized words and lacked a signature line or a from in the message which the trial judge noticed lacked a signature line or a sender in the forwarded message) which would have proven fraud. (Exhibit 11---See Plaintiff's Trial Exhibit, # 28)

61. Defendants failed to examine the emails produced in discovery.

62. Defendants failed to subpoena bank records such as deposit slips to prove his source of income for the past three years.

63. Defendants failed to subpoena bank copies of the endorsed cashiers checks to prove fraud. (Exhibit 12, p. 2 and p. 4)

64. Defendants failed to subpoena bank records of all checks deposited into the bank account ending 8843 from 2016 on that would have proven fraud.

65. Defendants failed to request an inspection of the CLS Capital Group Inc laptop for origination of emails, templates of contracts, templates of assignment documents, corporate minutes and other information.

66. Defendants failed to issue a third request for Production of Documents from CLS Capital Group Inc .

67. Defendants failed to issue a production for documents from Mockensturm.

68.  Defendants failed to name former co-directors Napper III and Napper II as defendants.

69. Defendants failed to timely subpoena records from Redell Vince Napper, II regarding Reginald Nussbaum.

70. Defendants failed to timely subpoena records from Redell Vince Napper, III regarding Reginald Nussbaum.

71. Defendants failed to request copies of loan documents showing CLS Capital Group Inc was a lender.

72. Defendants failed to subpoena MFG to produce copies of transactions that involved CLS Capital Group Inc.

73. Defendants failed to timely subpoena records from MFG regarding Reginald Nussbaum.

74. On or about October 27, 2020, Gazian was deposed.

75. On or about November 2, 2020, Plaintiffs submitted errata pages to Defendants which Defendants failed to submit to the court reporter.

76. Defendants failed to obtain proper certification of the deposition transcript of Gazian by not forwarding and or following up to the errata pages that were to be submitted to Genovese & Reno Reporting Service for necessary corrections that was possible by comparison with the Zoom audio.

77. Upon information and belief, Defendants failed to deliver the errata page and certification of Gazian deposition with errata changes.

78. Defendants failed to file a Motion to Suppress to prevent Gazian's deposition from being filed in the Court.

79. Defendants' failure to submit the errata pages that Gazian corrected, resulted in the trial court granting summary judgment with citations that included several pages of the uncorrected deposition. (Pages 31, 34, 38, 47 and 100) (Exhibit 13, p. 22)

80. In the same opinion, the court found that Pierre had not met the first element showing that "defendant has made false or misleading statements of fact concerning his own product or another's" (Exhibit 13, p. 28)

81. Defendants failed to investigate and reveal evidence that CLS Capital Group Inc was defunct and could not provide any loan products or financial services.

82. Defendants failed to properly plead Count IV for Unjust Enrichment against Uballe as a former shareholder of CLS Capital Group Inc and CLS Capital Group Inc for possession of the $75,000 that they did not return to Pierre upon the default of CLS Capital Group Inc.

83. Defendants failed to explain to court that a motion under Civil Rule 25(C) to substitute Comprehensive Lending Services Capital Group LLC for CLS Capital Group Inc could not be made because there was no valid contract, which would have been known if Defendants had investigated. (Exhibit 13, p. 31, ¶ 1)

84. Defendants filed an amended complaint and reasserted damages in the Promissory Estoppel claim "in excess of $3 million dollars." (Amended Complaint, Count V)

85. Defendants filed an amended complaint and reasserted damages in the Deceptive Trade Practice claim "in excess of $3 million dollars" but failed to specify which defendants committed the violations. (Amended Complaint, Count VI)

86. Defendants failed to obtain copies of the cancelled cashiers checks from Fifth Third Bank, which would have led to the discovery of another witness.

87. Defendants failed to inform Pierre of the amount of the separate fee to be charged for the filing of the interlocutory appeal of the opinion issued regarding the motion for summary judgment. (Exhibit 3)

88. Defendants' failure to file an interlocutory appeal caused Uballe to be dismissed as a defendant based on the argument that "the Loan Commitment was executed between two valid corporate entities…". (Exhibit 13, p. 20, ¶ 1).

89. Defendants failed to prepare Plaintiffs for trial at any time before he withdrew from the case.

90. On or about June 8, 2021, Defendants withdrew as trial counsel without prior written notification to Plaintiffs, as if, Plaintiffs had requested that the Defendants withdraw, when Plaintiffs were merely asking Defendants if the Plaintiffs' interest were being served. This added additional financial and emotional stress as it was just 5 weeks before the scheduled jury trial. Three days before trial, Pierre found trial counsel Joseph Westmeyer, III to replace Defendants.

91. Due to sudden withdrawal of trial counsel, Pierre had to withdraw its request for a jury trial in order to retain trial counsel on such a short notice.

92. At the September 21, 2021 bench trial, the October 2018 Contract attached to the Assignment Contract was found to be invalid.

93. At trial, Uballe testified that the Assignment contract between Comprehensive and CLS Capital Group Inc was not valid and admitted that he knew that CLS Capital Group Inc was defunct in the state of Delaware.

94. In addition to the damages suffered in this case, Pierre incurred $45,000 in unexpected and unforeseen legal expenses due to hiring two new attorneys for the bench trial.

95. An appeal is pending in this case in the Court of Appeals of Ohio Sixth Appellate District Lucas County under {48}L-21-1229, Trial Court No. CI0201904258.

96. In addition, Pierre incurred expenses for appeal in G-4801-CL-202101229-00 and expects additional trial expenses and additional attorney fees in addition to the attorney fees and expenses related to the appeal which are necessary in order to correct the problems caused by the legal malpractice.

97. An attorney-client relationship existed between Plaintiff and the Defendants. (Exhibit 3)

98. As such, the Defendants owed a professional duty to exercise care, skill and diligence in handling Plaintiffs' legal matters.

99. As part of the Legal Malpractice, the Defendants committed legal malpractice and or breached their duty to provide competent legal services by when they:

    99.1 Failed to employ sufficient staff to handle Plaintiffs' case;

    99.2 Failed to make good use of time in the discovery period;

    99.3 Failed to make good use of resources in the discovery period;

    99.4 Failed to obtains service on the complaint;

    99.5 Failed to sign the Motion for Default Judgment before filing it with the Court;

    99.6 Failed to verify whether CLS Capital Group Inc was in good standing in Delaware with the Delaware Secretary of State;

    99.7 Failed to prepare Defendants for the jury trial;

    99.8 Failed to provide competent representation as required under Rule 1.1 of Ohio Rules of Professional Conduct;

    99.9 Accepted a fraud case and incorrectly identified legal malpractice as a claim even though if Defendants had gained competence in the area of legal malpractice as required under Rule 1.1 of Ohio Rules of Professional Conduct they would have seen that an attorney-client relationship between Pierre Investments and the Mockensturm firm was missing but was a required element of legal malpractice;

    99.10   Prepared a defective complaint which caused claims to be dismissed;

    99.11   Prepared defective complaint which caused claims to be compromised to such an extent that no recovery could be made;

99.12  -Prepared a defective complaint which caused one or more actual claims to be dismissed or missed;

99.13  Prepared a defective amended complaint which caused one or more actual claims to be dismissed or missed;

99.14  Prepared a defective amended complaint which did not properly designate the defendants which committed fraud;

99.15  Included a legal malpractice claim which weakened the case due to lack of merit in that claim;

99.16  Included a legal malpractice claim which weakened the case due time spent on a claim that lacked merit;

99.17  Failed to amend the complaint after the November 2020 deposition of the Mockensturm Defendants in which they continued to claim they had participated in multi-million dollar loans that were processed by CLS Capital Group Inc in which Mockensturm Defendants acted as "underwriters" when this is impossible since CLS Capital Group Inc had been defunct since 2012;

99.18  Failed to include the other two collectible former directors named Helen Odum and Redel V. Napper, III as parties;

99.19  Failed to complete a thorough investigation resulting in a defective complaint which caused the claims such as fraud to be dismissed before trial and which caused the breach of contract claim to be against CLS Capital Group Inc instead of piercing the corporate veil to reach the collectible parties while drafting the amended complaint, which ultimately resulted in a lack of a judgment against the former directors of CLS Capital Group Inc.;

99.20   Failed to respond to evidence obtained in discovery resulting in a defective amended complaint;

99.21   Failed to respond to evidence obtained in depositions and at the Delaware Secretary of State which resulted in a missed opportunity to amend the complaint in November 2021 with the proper parties and with the fraud claim which ultimately resulted in Plaintiffs' case being dismissed without obtaining a judgment against the collectible parties responsible for the millions of dollars in damages that the Defendants Anspach firm and Kent Riesen calculated in the Amended Complaint;

99.22   Failed to complete basic research into the Secretary of State records to discover CLS Capital Group Inc was defunct before the final deadline to amend the complaint;

99.23   Failed to question how Defendant Mockensturm Law firm did business with CLS Capital Group Inc even though CLS Capital Group Inc was defunct after Mockensturm Defendants had claimed in the February 22, 2019 letter that Mockensturm had attorney client privileges with the defunct business and used the pretense that it did business with CLS Capital Group Inc in an attempt to assist CLS Capital Group Inc in the fraudulent inducement of Pierre Investments into investing $75,000 into a scam;

99.24   Prepared a defective amended complaint which did not properly designate the defendants which committed fraud;

99.25   Failed to amend the Complaint to properly designate the defendants which committed fraud;

99.26   Failed to investigate proper registration of CLS Capital Group Inc whether it was an LLC or an Inc.;

99.27   Failed to name the agents of CLS Capital Group Inc in the complaint;

99.28   Failed to serve the agent of CLS Capital Group Inc in Wilmington, Delaware;

99.29   Failed to serve the agent of CLS Capital Group Inc in care of the Secretary of State of Delaware;

99.30   Failed to name collectible parties such as Helen Odum as a defendant in the amended complaint;

99.31   Failed to name collectible parties such as Redell V. Napper, III as a defendant in the amended complaint;

99.32   Failed to name collectible parties such as Redell V. Napper, II as a defendant in the amended complaint;

99.33   Failed to keep collectible parties such as Reynaldo Uballe, Jr as a defendant in the amended complaint because it failed to see that CLS Capital Group Inc was defunct and uncollectible;

99.34   Failed to prosecute all claims for relief available through constructive trust, conversion or bad faith related to Uballe, who entered into the agreement with no intent to fulfill any obligations after collecting $75,000 from Pierre;

99.35   Failed to name Gehard Luxury Homes as a party even though he had lost earnings and profits from the sale of each home Gehard Luxury Homes constructed in the planned project and real estate commissions since CLS Capital Group Inc had no legal way to fund the project since it had been defunct since 2012;

17

99.36   Failed to name Ken Gazian as a plaintiff party that incurred damages as he relied on the real estate profits that were anticipated in the real estate development project;

99.37   Failed to examine the October 2018 contract attached to the frivolous counterclaim and the assignment of the contract to Comprehensive Lending Services Capital Group, LLC (Exhibit 5);

99.38   Failed to assert all defenses available to Pierre in his defense of the counterclaim.

99.39   Failed to state with specificity the affirmative defenses including lack of capacity, lack standing, and lack of existence when filing the first pleading in response to the counterclaim;

99.40   This failure to assert defenses resulted in the Court finding that Pierre had "plainly waived its argument …by …failing to raise the issue in a timely fashion." In its opinion, the Court stated that since Defendants "failed to set forth the defense affirmatively, the Court finds Plaintiff's argument that CLS lacks the capacity to present its Counterclaim to have been waived." (Exhibit 14: <u>Opinion and Judgment Entry</u> August 24, 2021, p. 10, ¶ 2);

99.41   Failed to defend against the counterclaim in a timely manner by discovering and presenting facts in the first pleading that the October 2018 contract was not signed. (See Exhibit 9);

99.42   Failed to mention the non-existence of CLS Capital Group Inc which resulted in a decision by the court that this issue had been waived resulting in extra expense in defending against the counterclaim and which resulted in a dismissal of all claims and the omission of valid claims against its former directors. (Exhibit 14);

18

99.43   Failed to assert affirmative defenses resulting in the court finding that the

defenses had been waived, which resulted in Plaintiffs' need to incur travel expenses

from Texas to Ohio and back as Plaintiffs were forced to defend a counterclaim

which should have been dismissed due to the non-existence of CLS Capital Group

Inc since 2012;

99.44   Failed to take notice that signature on the Certified Mail Receipt (attached to the

envelope containing the summons and complaint) did not match to the name of any

agent of CLS Capital Group Inc. Since the receipt was signed by an unknown person

named "Hannah", service was not perfected. (Exhibit 8);

99.45   Failed to sign the Motion for Default Judgment prior to submission to the Court;

99.46   Failed to include a claim against Mockensturm Ltd. for misrepresentation of its

ability to underwrite loans without holding required license or experience;

99.47   Failed to discover and include a claim against Mockensturm Ltd. for

misrepresentation of its ability to open an escrow agent on behalf of a defunct

corporation;

99.48   Failed to research and provide case law in support of Pierre's third party claim it

its response to the motion for summary judgment filed by Mockensturm Ltd;

100.   Failed to request documents pertaining to bank accounts held by CLS Capital Group Inc;

101.   Failed to issue a subpoena to CLS Capital Group Inc banks to obtain copies of the

deposited cashier's checks;

102.   Failed to request to compel production of redacted documents, previously demanded by

Musgrove, which would have shown no attorney-client relationship between Mockensturm

LTD and Uballe/CLS Capital Group Inc.;

103.    Failed to request to compel production of redacted versions of CLS Capital Group Inc

loans underwritten by Mockensturm Ltd, previously demanded by Musgrove, which would

have shown no loans in any amount had ever been underwritten by Mockensturm Ltd.;

104.    Failed to submit Plaintiff Gazian's completed errata pages to Genovese & Reno

Reporting Service which resulted in the submission of an uncorrected and unsigned version

of the deposition transcript being accepted as evidence;

105.     Failed to provide sufficient support to handle the investigation of the claims, discovery

and preparation for trial;

106.    Failed to keep focus on the case when it found that Mockensturm Ltd  insurance policy

coverage may not provide legal malpractice coverage;

107.    Failed a provide a true statement in the pleadings when they alleged "CLS Capital Group,

Inc. is a Delaware corporation doing business in Ohio", when in fact, it was inoperative and a

defunct Delaware corporation doing business in Ohio;

108.    Failed to examine and investigate the "Loan Commitment" agreement to discover

multiple non-existing entities and misspelled names (Capital as "Capitial") and an erroneous

swift code and incorrect bank and business address, which would have proven fraud;

109.    Defendants failed to examine and notice that Uballe was not a valid officer, and that he

used various terms to describe his position as managing director, president and Chief

Operating Officer;

110.    As a direct and proximate result of the above failures, the $75,000 dollars fraudulently

obtained from Pierre were retained by Uballe and or CLS Capital Group Inc and all of

Pierre's valid claims were dismissed or omitted from the Amended Complaint;

111.    By failing to draft a sufficient complaint based on the facts and documents available to the Defendants, the Defendants caused the Plaintiffs to lose any chance of recovery from the directors that were collectible if a judgment had been obtained through their assets, domestic real estate, foreign real estate, domestic bank accounts, foreign bank accounts and trust funds since these defendant and or the claims of fraud and or civil RICO were omitted from the Amended Complaint.

112.    As a direct and proximate result of the above failures, Pierre incurred unexpected attorneys' fees and other expenses.

113.    No reasonable and competent attorney would have failed to look at the Delaware Secretary of State records to obtain the address to serve the complaint(s) and determine whether the defendant CLS Capital Group Inc was in good standing in the State of Delaware.

114.    No reasonable and competent attorney would have failed to name all former co-directors of CLS Capital Group Inc in the Complaint(s). (Exhibit 15, Amended Complaint 07/01/2020)

115.    No reasonable and competent attorney would have failed to discover and notify the Court that CLS Capital Group Inc had been out of business since March 1, 2012, which would have led to a ruling in favor of Pierre on the fraud claims.

116.    As a direct and proximate result of Defendants' professional negligence, Defendants failed to focus on the issue of fraud and failed to defend against the counterclaim that was based on an unsigned contract and defunct corporations, and failed to name all possible defendants and failed to assert all possible claims, Plaintiffs each have sustained damages in excess of $75,000, the exact amount to be determined at trial.

117.    Because of the Defendants' negligence and their failure to properly prepare the complaint, pleadings, and failure to prepare for trial, Plaintiff has incurred unforeseen

attorney fees to correct the legal malpractice, and expenses for trial and in prosecuting the appeal to correct the legal malpractice and other recourse.

118. Because of Defendants' negligence, Plaintiffs had no recourse against the Mockensturm defendants in the trial.

119. Because of Defendants' negligence, Plaintiffs lost all claims against the Mockensturm Defendants and lost all fraud claims against Uballe and CLS Capital Group Inc.

120. The Defendants' actions herein were in reckless disregard for Plaintiffs' rights.

121. The Defendants owed Plaintiffs a duty to possess and employ the skill and knowledge that ordinarily is employed by a professional.

122. An attorney exercising the ordinary skill and knowledge of a legal professional would have investigated and called the witnesses suggested by the Plaintiffs prior to the end of the discovery period.

123. The Defendants acted in deviation from the standard of care of a reasonable attorney and breached their duties owed to the Plaintiffs.

124. The Defendants' actions were the proximate cause of Plaintiffs' harms, were a substantial factor in bringing about these harms, and significantly increased the risk these harms would occur.

125. The failure was a direct cause of the 2021 Opinions that dismissed most claims and released Uballe and Mockensturm as defendants leaving Plaintiffs without a remedy.

126. Plaintiffs would have prevailed in the state court dispute over the fraud and the other claims in the absence of professional negligence by the Defendants.

127.    The Defendants agreed in the Contingency Fee Contract to handle Pierre's interlocutory appeals, but failed to provide Pierre with this option in a timely manner, which such was necessary.

128.    As result of the Defendants' above failures, a motion for a summary judgment against Pierre was partially granted on March 23, 2021 which left Plaintiffs without a remedy or recourse due mostly to the defective drafting of the Amended Complaint or the failure to Amend the defective complaint.

129.    Defendants failed to subpoena records from MFG regarding Reginald Nussbaum.

130.    As result of the Defendants' above failures, a motion to dismiss Uballe as a party in the breach of contract claim was granted on March 23, 2021.

131.    As result of the Defendants' above failures the final count alleging breach of contract was dismissed in October 2021.

132.    A fee agreement was entered into in 2019. (Exhibit 3)

133.    The Opinion and Judgment Entry was E-journalized on March 23, 2021. (Exhibit 13)

134.    Defendants failed to propose a separate fee for the interlocutory appeal within the thirty-day period following the date that the Court E-journalized the Opinion and Judgment Entry.

135.    Defendants failed to file the interlocutory appeal within the thirty-day period following the date that the Court E-journalized the Opinion and Judgment Entry. (Docket)

136.    Plaintiffs discovered the benefit of exercising its right to an interlocutory appeal only after the deadline had passed.

137.    If the interlocutory appeal had been filed, the need for trial would have been eliminated because the appellate court would have agreed with Pierre that there is no distinction between a "lender" and a "direct lender" as neither could fund a ten-million dollar loan. All lenders

23

are direct lenders. CLS Capital Group Inc claimed to be a lender, but had no funds to lend and or ability to lend as they were defunct.

138.    As a direct and proximate result of Defendants' breach, Plaintiffs lost all interlocutory appeal rights and is still incurring attorneys' fees and legal expenses of a full appeal on issues that could have been resolved through an interlocutory appeal.

139.    The Defendants' actions herein were in breach of the contract entered into with Pierre.

WHEREFORE, Plaintiffs each pray for judgment in excess of seventy-five thousand dollars ($75,000) against the Defendants, jointly and severally for compensatory damages, lost profits, lost earnings, lost commissions,  punitive damages, attorneys' fees to take the case to trial after counsel abruptly withdrew without warning and attorneys' fees to appeal decisions that were due to the legal malpractice and attorneys' fees related to this malpractice action, legal expenses, costs, and any further relief the Court deems equitable.

Respectfully submitted,

*/s/Cynthia M. Rodgers*
**CYNTHIA M. RODGERS (0099896)**
**LAW OFFICE OF CYNTHIA M. RODGERS, L.L.C.**
605 Cass St., PO Box 1
Dresden, Ohio 43821
Phone: 740-575-6870
Fax: 740-754-2484
Email: cynthia@cynthiarodgerslaw.com
*Counsel for Plaintiffs*

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issue so triable.

24

*/s/Cynthia M. Rodgers*
**CYNTHIA M. RODGERS (0099896)**