IN THE UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Pierre Investments, Inc., *et al.*, | : | Case No. 3:22-CV-00932 |
| | : | |
| Plaintiffs, | : | Judge James R. Knepp |
| | : | |
| -vs- | : | **DEFENDANTS' REPLY IN** |
| | : | **SUPPORT TO THEIR MOTION** |
| Anspach Meeks Ellenberger LLP, *et al.*, | : | **FOR JUDGMENT ON THE** |
| | : | **PLEADINGS** |
| Defendants. | : | |

Now come Defendants, Anspach Meeks Ellenberger LLP, Anspach Law, and Kent D. Risen, by and through counsel, Reminger Co., L.P.A., pursuant to Rule 12(C) of the Rules of Civil Procedure, and hereby respectfully submit their Reply in Support of Motion to Dismiss. For the reasons set forth in Defendants' opening motion, as well as those contained in this reply, Plaintiffs' action against Defendants should be properly dismissed with prejudice as a matter of law. A Reply Brief is attached hereto, made a part hereof, and incorporated by reference as if fully rewritten.

Respectfully submitted,

*/s/David R. Hudson*
David R. Hudson (0084988)
REMINGER CO., L.P.A.
One Seagate, Suite 1600
Toledo, Ohio 43604
(419) 254 – 1311 (phone)
(419) 243-7830 (fax)
dhudson@reminger.com

*Counsel for Defendants Anspach Meeks Ellenberger, LLP, Anspach Law, and Kent D. Risen*

## REPLY BRIEF

I.    **INTRODUCTION**

     Defendants' opening brief set forth authoritative law and argument establishing that Defendants are entitled to judgment on the pleadings dismissing all claims in the Amended Complaint asserted against Defendants Anspach Meeks Ellenberger LLP, Anspach Law, and Kent D. Risen. The basis for Defendants position is simple: Plaintiffs cannot meet their burden of pleading a plausible claim for relief under the facts presented in the Amended Complaint.[1] To establish a viable cause of action for legal malpractice, a plaintiff must allege *plausible and well-pled facts* that tend to establish not only the elements of a claim for legal malpractice, but also sufficient facts to establish that the underlying claim was actually viable, but for the alleged malpractice. Here, however, for several <u>purely legal reasons</u> that were already determined by the trial court, Plaintiffs have no viable claims.

     Plaintiffs' Memorandum in Opposition ("Opposition") does not rebut these clearly articulated arguments but attempts to obfuscate the issues before this Court. Specifically, Plaintiffs' Opposition simply regurgitates claims alleged in its Amended Complaint to argue "this is what the Defendants should have done." However, other than authority pertaining to Fed. R. Civil Proc. 12(C), Plaintiffs' Opposition is devoid of any case law supporting these bald legal assertions, likely because no such case law exists.

---

[1] It is worth noting that Defendants contend that there should only be one Plaintiff, Pierre Investments, Inc., in this matter. The fee agreement is clear and controlling on this issue. See Doc. #11-3, PageID #393-94. The same argument extends to the Loan Commitment. See Doc. #11-1, PageID #384-90. Any reference or signature of Ken Gazian was as President and CEO of Pierre Investments Inc., not in his individual capacity. Gehard Luxury Homes is not referenced in either document. Defendants make additional substantive arguments on this issue later, but Defendants have no duty or obligation to represent entities or individuals outside a fee agreement.

At the end of the day, three facts remain clear. First, Plaintiffs cannot overcome the causation element in establishing a viable claim for relief. The causation element dictates that the merits of the malpractice action depend upon the merits of the underlying case (a case within a case). *Jones v. Zyndorf*, 2013 U.S. Dist. LEXIS 115564, *15-17. Second, even if there was a viable claim – and there is not – any legal malpractice claim based upon the underlying claims against CLS Capital Group, Inc. ("CLS") fail as a matter of law for want of damages.[2] CLS was a "blank check company;" this is not in dispute. Third, neither Gehard Luxury Homes nor Ken Gazian have standing in this alleged legal malpractice action as neither had an Attorney-Client relationship with Defendants. The Contingent Fee Agreement is clearly between "Pierre Investments (the Client)" and "Anspach Meeks Ellenberger LLP (the Attorneys)."[3] All Plaintiffs' claims against Defendant fail as a matter of law either due to, lack of causation, lack of privity, or lack of recoverable damages. Therefore, this Court should dismiss Plaintiffs' Amended Complaint with prejudice.

II.     **LAW AND ANALYSIS**

    A. *Defendants Answer and 12(C) Motion Were Filed Simultaneously*

In their Opposition, Plaintiffs appears to take issue with the fact that Defendants' Motion for Judgement on the Pleadings[4] was received <u>seven minutes</u> before Defendants' Answer to Plaintiffs' Amended Complaint.[5] While it may be true that the Motion ended up being the

---

[2] CLS was indisputably recognized as a "blank check company" at the time the Loan Commitment was executed. Though obviously not ideal from a business perspective, CLS's status was known to Plaintiffs and is permissible under the law. CLS was ostensibly judgment proof.
[3] Doc. #11-3, PageID #393-394.
[4] Defendants' Motion for Judgement on the Pleadings was filed on September 26, 2022, at 3:16pm.
[5] Defendants' Answer to Amended Complaint was filed on September 26, 2022, at 3:23pm.

first filing to hit this Court's docket, the reality is the Answer and the Civ. R. 12(C) Motion were intended to be filed simultaneously and the docket reflects this reality. The lack of any citation to legal authority should exemplify to this Court that this legal argument is a "red herring." Indeed, the filing of the Motion <u>seven minutes</u> before the Answer was nothing more than an administrative clerical error that is of no legitimate consequence to the legal issues presented.

### B. *Plaintiffs' Claims Lack Plausibility and Causation*

A plain reading of Plaintiffs' Opposition reveals it is not an opposition to Defendants' legal position at all, but merely a regurgitation of the allegations contained in its Amended Complaint (in very long run-on sentences). Plaintiffs' purported "facts" are based on pure conjecture and speculation and fails the plausibility standard as set forth in *Twombly*[6] and *Iqbal*.[7] Even if Plaintiffs' conjecture about "what could have been" is accepted as true, this argument still fails to demonstrate the causation element required for a legal malpractice claim.

It is beyond dispute that, Plaintiffs' underlying claims (the case within a case) was deemed meritless by two different Judges on purely legal issues. In this regard, both Judge Duhart and Judge McNamara found that Plaintiffs' underlying claims lacked legal merit as a matter of law and warranted.[8] Plaintiffs' burden here is to plead a plausive set of facts that would demonstrate that "but for" Defendants' alleged malpractice, Plaintiffs would have been successful in their underlying case. *Envtl. Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St. 3d 209, 213 (requiring proof that the malpractice was the "but for" cause of plaintiff's

---

[6] *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 564-570.
[7] *Ashcroft v. Iqbal*, 129 S.Ct. 1937.
[8] A more detailed analysis is contained in Defendant's Motion for Judgment on the Pleadings and Defendants will not waste valuable Court time and resources reiterating these arguments here.

injuries). However, the legal obstacles to a viable claim, as evident from the Court Orders, make it very clear that no such claims could ever be viable under the facts that exist in relation to the underlying loan transaction at issue. Therefore, dismissal of Plaintiffs' Amended Complaint is warranted as a matter of law.

### C. Individual Defendants Cannot by Personally Liable

Plaintiffs' Opposition argues that Mr. Uballe, Mr. Napper, Ms. Odum, Mr. Mockensturm, and Mr. Rehkopf, "could have been found personally liable for their fraud in this scheme." However, this is not the law, and the argument ignores the plain language of the Trial Court's findings of fact concerning the underlying transaction, making this contention no plausible as a matter of law. In the underlying case, Plaintiff Pierre Investment Inc. ("Pierre Investments") and CLS negotiated the terms of the financing from approximately October 14, 2018, to November 5, 2018 (Plaintiff Pierre Investments used a Texas Lawyer for this negotiation, but of course, that lawyer has not been sued for malpractice). Indeed, the Trial Court found that the Loan Commitment's terms superseded any purported "fraudulent misrepresentations" that Plaintiff Pierre Investments had alleged against Defendant CLS.[9] Further, the Trial Court found no false statement or other misrepresentations by Mockensturm Defendants.[10] If this legal determination is accepted as true by this Court (the law of the

---

[9] See Opinion and Judgment Entry of March 23, 2021, by Judge McNamara (page 26). "The Loan Commitment expressly provided that 'This Agreement supersedes all prior correspondence, other agreements, and oral and other communications relating to financing arrangements between Borrower and Lender.'" Doc. #1-13, PageID #104. Incorporated by reference in Plaintiffs' Amended Complaint, Doc. #11-13, PageID #410.

[10] See Opinion and Judgment Entry of March 23, 2021, by Judge McNamara (page 13). "On review, constructing the evidence most strongly in Plaintiff's favor, the Court finds no genuine dispute of material fact supporting the existence of false statements or other misrepresentations made by the Mockensturm Defendants to Plaintiff, either to Gazian or Musgrove." Doc. #1-13, PageID #111. Incorporated by reference in Plaintiffs' Amended Complaint, Doc. #11-13, PageID #410.

underlying case), then any representations attributable to Uballe, Napper, and Odum (collectively as representatives of Defendant CLS), or Mockensturm and Rehkopf (collectively as representatives of Mockensturm Defendants) must also suffer the same fate and would fail as a matter of law. After all, corporations can only act through their agents.[11] If the terms of the Loan Commitment superseded all claims of "fraudulent misrepresentation," then any claim that individual actors made fraudulent statements about the loan also must fail. The Plaintiffs' brief totally ignores this analysis because it is an absolute legal barrier to the legal malpractice claim.

### D. CLS was a "Blank Check Corporation"

Plaintiff continues to argue that CLS was a "defunct corporation." Regardless of whether that is true now, at the time of the underlying loan transaction CLS had a legitimate legal status as a "blank check" company – meaning CLS had no revenue or business operations as a matter of law (indeed, that is the point of blank check companies, they are looking for a deal).[12] Thus, as a practical matter, Plaintiff Pierre Investment entered into this transaction with a shell company that was looking for a deal so as to obtain future venture capital funding to allow its business to function. This fact was well known at the time of the underlying transaction, as evidenced by the exhibits attached to Plaintiffs' Amended Complaint in this case. As a result of these truths, CLS was essentially judgment proof <u>during the entirety of its dealings</u> because it was a "blank check company." This is not an issue that is in dispute. Furthermore, Plaintiff Pierre Investment elected to engage in a business deal with CLS as a blank check company long

---

[11] *James G. Smith & Assoc., Inc. v. Everett*, 1 Ohio App. 3d 118, 120.
[12] If the contention here is that CLS was defunct at the time of the underlying transaction, then the legal malpractice claim should be against Plaintiffs' Texas Attorney for a lack of due diligence and failure to investigate the transaction. But since that is not the subject of these claims, any such claim fails in this case for a lack of proximate cause. If CLS was not defunct at the time of the transaction, then Plaintiff Pierre Investment assumed the risk of any harm by entering into the transaction and there can be no proximate cause. It is that simple.

before it hired Defendants to pursue a claim.[13] If Plaintiffs take issue with CLS being "defunct" because of its "blank check" legal statute, it has only itself to blame (or maybe its Texas attorney, but no one seems to want to talk about that here).[14]

### E. Gazian and Gehard Luxury Homes Lack Standing

Neither Gehard Luxury Homes nor Ken Gazian have standing in this action to assert a claim because they did not have an Attorney-Client relationship with Defendants. In Ohio, the law is clear that to establish a claim for legal malpractice, a plaintiff must demonstrate the following elements: 1) an attorney-client relationship; 2) a professional duty arising from that relationship; 3) breach of that duty; 4) proximate cause; and 5) damages.[15] The elements of a legal malpractice claim are stated in the conjunctive, and the failure to establish even a single element is fatal to the entirety of the claim.[16] The Contingent Fee Agreement is clearly between "Pierre Investments (the Client)" and "Anspach Meeks Ellenberger LLP (the Attorneys)."[17] Furthermore, Plaintiffs readily admit that Plaintiff Pierre Investments was Defendants only client: "The law firm contracted to represent Pierre [Pierre Investments] in its fraud matter...."[18] Simply put, Gazian and Gehard Luxury Homes are not a part of the attorney-client relationship, which is readily apparent from a plain and ordinary review of the Contingent Fee

---

[13] Plaintiff Pierre Investment signed the Loan Commitment with CLS on November 5, 2018. See Doc. #11-1, PageID #389. Plaintiff Pierre Investments signed the Contingent Fee Agreement with Defendants nearly a year later on October 28, 2019. See Doc. #11-3, PageID #394.
[14] It should be noted that while the Loan Commitment form was provided by CLS, the final draft of the Loan Commitment was prepared by Plaintiff Pierre Investments' attorney Walter Musgrove. See Opinion and Judgment Entry of March 23, 2021, by Judge McNamara (page 4). Doc. #1-13, PageID #103. Incorporated by reference in Plaintiffs' Amended Complaint, Doc. #11-13, PageID #410.
[15] *Jones v. Zyndorf*, 2013 U.S. Dist. LEXIS 115564, *10. See also *Vahila v. Hall*, 77 Ohio St.3d 421, 427; *Shoemaker v. Gindlesberger*, 118 Ohio St. 3d. 226, 228; and *Krahn v. Kinney*, 43 Ohio St. 3d 103, 105.
[16] *Benesch, Friedlander, Coplan & Aronoff, L.L.C. v. Jochum*, 2019-Ohio-2321, P15, citing *Williams-Roseman v. Owen*, 2000 Ohio App. LEXIS 4254, *12. See also *Bilaal v. Definance Publ'g Co.*, 2005 U.S. Dist. LEXIS 25675, *3.
[17] Doc. #11-3, PageID #393-394.
[18] Doc. #1, PageID #3, at paragraph 6 and Doc. #11, PageID #361, at paragraph 6.

Agreement. Under Ohio law, as a general rule, an attorney is liable to his client alone and not to third parties for negligence in the conduct of his professional duties.[19] Therefore, any damage asserted by Gazian, or Gehard Luxury Homes is improper as a matter of law and must be dismissed.

## III. CONCLUSION

For the reasons set forth above, as well as those presented in Defendants original motion, Defendants request this court grant their Motion for Judgment on the Pleadings, dismissing Plaintiffs' claims with prejudice.

Respectfully submitted,

/s/David R. Hudson
David R. Hudson (0084988)
REMINGER CO., L.P.A.
One Seagate, Suite 1600
Toledo, Ohio 43604
(419) 254 – 1311 (phone)
(419) 243-7830 (fax)
dhudson@reminger.com

*Counsel for Defendants Anspach Meeks Ellenberger, LLP, Anspach Law, and Kent D. Riesen*

### CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically with the Court. Notice of this filing will be sent to all counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/David R. Hudson
David R. Hudson (0084988)

---

[19] *Lucas-Cooper v. Palmetto GBA*, 2006 U.S. Dist LEXIS 63783, *9, citing *Stoll v. Kennedy*, 38 Ohio App. 3d 102, 104.