**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**PIERRE INVESTMENTS, INC.,**
**et al.,**

   Plaintiffs,

   v.

**ANSPACH MEEKS ELLENBERGER, LLP,**
**et al.,**

   Defendants.

CASE NO. 3:22 CV 932

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND**
**ORDER**

### INTRODUCTION

Currently pending in this legal malpractice case is Defendants Anspach Meeks Ellenberger, LLP, Anspach Law, and Kent Riesen's Motion for Judgment on the Pleadings (Doc. 12). Plaintiffs Pierre Investments, Inc., Gehard Luxury Homes, and Ken Gazian opposed (Doc. 14), and Defendants replied (Doc. 15). Jurisdiction is proper under 28 U.S.C. § 1332. For the following reasons, this Court grants Defendants' motion.

### BACKGROUND

On November 5, 2018, Plaintiff Pierre Investments, Inc., (a corporation owned by Plaintiff Ken Gazian of Texas, and also doing business as Plaintiff Gehard Luxury Homes, a Texas business) entered a loan commitment agreement ("the LCA") with lender CLS Capital Group, Inc., owned by Renaldo Uballe, Jr., for a loan of $10 million for the purpose of developing luxury homes on a ten-acre site in Texas. (Doc. 11, at 3-4). At the time, Plaintiffs were represented by Walter Musgrove, III; CLS Capital was based in Toledo, Ohio, and represented by Mockensturm, Ltd. *Id.* at 4. Prior to signing the LCA, Plaintiffs contacted Brandon Rehkopf and Mark Mockensturm of

Mockensturm, Ltd., and "obtained assurance that CLS Capital Group Inc [sic] was a good company and capable of lending ten million dollars". *Id.* The LCA (attached to the Amended Complaint) contained, in relevant part, the following terms:

> CLS Capital Group Inc. – Finance Division, or assigns ("CLS" or "Lender") is pleased to offer this conditional loan commitment for the real estate development and working capital purposes for PIERRE INVESTMENTS INC (the "Borrower"). This Agreement supersedes all prior correspondence, other agreements, and oral and other communications relating to financing arrangements between Borrower and Lender.
>
> ***
>
> Loan Amount:
> Ten Million and NO/100 ($10,000,000.00). The loan amount has been approved and is guaranteed for funding subject to execution of necessary documentation that is to be prepared after execution and acceptance of this document.
>
> ***
>
> Commitment, Administrative, Risk Management & Legal Fees:
> Seventy-Five Thousand and NO/100 USD ($75,000.00). The commitment, risk management & legal fees shall be used to offset transactional expenses associated with this transaction. This fee will be applied as a credit towards the Origination Fee. Should Lender decline this transaction due to Lender's inability to verify or confirm project information provided by Borrower, the unused portion of up to 20% of the commitment fee shall be refunded to the Borrower.
>
> ***
>
> Conditions Precedent to Lending:
> Loan may be subject to the following:
> - No material adverse change in the financial condition, operations or prospects of the Borrower prior to funding.
> - Completion of the documentation confirming all terms accepted with this commitment and of the proposed financing satisfactory to Lender and Lender's counsel.
> - Results of all legal due diligence, including lien, judgment and tax search and other matters Lenders may request shall be satisfactory to Lender and Lender's counsel.
>
> ***
>
> Conditions of Acceptance:
> This conditional loan commitment is intended to be a summary of the most important elements of the agreement to enter into a loan with Borrower, and it will not deviate in its requirements and conditions contained in Loan documentation proposed by the Lender or its counsel in the course of closing the Loans described herein. Not every provision that imposes duties, obligations, burdens, or limitations on Borrower is contained herein, but shall be contained in the final Loan documentation satisfactory to Lender and its counsel. No content of the Loan documentation was disclosed to the Borrower, thus if any conditions, terms and

2

intents of the loan outlined in this loan commitment deviate from those proposed in the final Loan documentation, Borrower reserves full rights to decline the loan and request full refund of the commitment fee.

(Doc. 11-1, at 1-5). On November 10, 2018, per the LCA, Plaintiffs paid $75,000 in commitment, administrative, risk management, and legal fees to CLS Capital by mailed cashier's checks. (Doc. 11, at 5). CLS Capital never provided the loan to Plaintiffs. *Id.* By February 2019, Plaintiffs suspected fraud. *Id.*

Plaintiffs attached to the Amended Complaint a declaration regarding CLS Capital from the Delaware Secretary of State (Doc. 11-4), a notice of final decision by the US Securities and Exchange Commission ("SEC") (Doc. 1-5), and CLS Capital's 2009 Form 10-K submitted to the SEC (Doc. 1-6).[1] The Form 10-K describes CLS Capital as a "blank check" company, defined as a "development stage company that is issuing a penny stock . . . and that has no specific business plan or purposes"; a blank check company "also qualifies as a 'shell company,' because it has no or nominal assets . . . and no or nominal operations." (Doc. 1-6, at 4). The Delaware Secretary of State declaration "certif[ies] that the aforesaid company [CLS Capital] is no longer in existence and good standing under the laws of the state of Delaware[,] having become inoperative and void the first day of March, A.D. 2012[,] for non-payment of taxes." (Doc. 11-4, at 1). The SEC notice of final decision, issued February 24, 2014, ordered that "pursuant to Section 12(j) of the Securities Exchange Act of 1934, the registration of the registered securities of CLS Capital Group, Inc., . . . is revoked." (Doc. 1-5, at 1). The revocation was ordered for CLS Capital's "repeated failure to

---

1. Plaintiffs appended the same 15 documents to their Amended Complaint as to their original Complaint. Due to a filing error, only the first page of several of those documents was attached to the Amended Complaint; they are available in full as attached to the original Complaint. This Court references the documents attached to the original Complaint, so as to read them in full, with the understanding that these documents were intended to be attached to the Amended Complaint.

file required periodic reports with the Securities and Exchange Commission." *Id.* at 3. The decision describes CLS Capital as "a void Delaware corporation located in Toledo, Ohio". *Id.* at 5.

On April 16, 2019, Plaintiffs called Defendant Kent Riesen, an attorney at Defendant Anspach Meeks Ellenberger, LLP (also referred to as Defendant Anspach Law), to discuss fraud claims against CLS Capital and its attorneys. (Doc. 11, at 5). On October 18, 2019, Defendants filed a lawsuit in the Lucas County Court of Common Pleas on behalf of Plaintiffs against CLS Capital, Reynaldo Uballe, Jr., Brandon Rehkopf, Mark Mockensturm, and Mockensturm, Ltd. *Id.* at 6. The amended complaint in that case asserted claims of fraud against all defendants, of legal malpractice against the Mockensturm defendants, and of breach of contract, unjust enrichment, promissory estoppel, and deceptive trade practices against the CLS defendants. (Doc. 11-15, at 17-23).

According to state court opinions and judgment entries attached by Plaintiffs to their Amended Complaint in this case, Plaintiffs' legal malpractice claim against the Mockensturm defendants was dismissed on a motion for judgment on the pleadings on September 10, 2020. (Doc. 1-10, at 11). On March 23, 2021, upon motion for summary judgment, Plaintiffs' fraud claim against the Mockensturm defendants was dismissed; Plaintiffs' claims of fraud, unjust enrichment, promissory estoppel, and deceptive trade practices against CLS Capital and related defendants were dismissed; and upon motion to dismiss, Plaintiffs' breach of contract claim against Uballe, Jr., was dismissed, and a counterclaim for breach of contract against Plaintiffs by Uballe, Jr., was dismissed. (Doc. 1-13, at 28, 30, 32). On August 24, 2021, Plaintiffs' motion to dismiss CLS Capital's counterclaim for breach of contract was denied. (Doc. 1-14, at 1).

After conclusion of a bench trial which began September 20, 2021, the state court took judicial notice that CLS Capital had been inoperative and void since March 1, 2012, and no longer

existed as an actual or legal entity. *See Pierre Inv., Inc. v. CLS Cap. Grp., Inc.*, 2021 WL 9978551, at *12 (Lucas Cnty. Ct. Com. Pl.). Plaintiffs state "the final count alleging breach of contract was dismissed in October 2021." (Doc. 11, at 23). At the time the Amended Complaint was filed in the instant case, Plaintiffs' appeal of the state case was pending in the Ohio Court of Appeals. *Id.* at 13. On December 2, 2022, the state appellate court affirmed the decisions of the lower court. *Pierre Inv., Inc. v. CLS Cap. Grp., Inc.*, 202 N.E.3d 870 (Ohio Ct. App. 2022). The Ohio Supreme Court did not accept an appeal of the case for review. *Pierre Inv., Inc. v. CLS Cap. Grp., Inc.*, 169 Ohio St.3d 1475 (2023).

In their Amended Complaint in this case, Plaintiffs list nearly 20 pages of failures by Defendants in managing the state court case which Plaintiffs allege amount to legal malpractice. *See id.* at 5-24. These include: failure to conduct thorough factual discovery (*see, e.g.*, *id.* at 5-7, 10-12); failure to accurately plead the relevant claims (*id.* at 8-9, 17-19); failure to file interlocutory appeals, motions to suppress, an amended complaint, or other filings with the court (*id.* at 8-11, 15); failure to prepare for trial and withdrawing as counsel five weeks before a scheduled jury trial (*id.* at 13); failure to name and serve certain parties (*id.* at 15, 17-18); failure to assert defenses to a counterclaim (*id.* at 18-19); and, overall, failure to prioritize the case and pursue it competently (*id.* at 20-21).

## STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Civil Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion. *Coley v. Lucas County*, 799 F.3d 530, 536–37 (6th Cir. 2015). When deciding either motion, this Court presumes all factual allegations in the complaint to be true and makes all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

A complaint will only survive if it states a plausible claim for relief on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To do so, the complaint must state factual allegations that allow this Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bates v. Green Farms Condominium Ass'n*, 958 F.3d 470, 480 (citing *Iqbal*, 556 U.S. at 678). A complaint is not required to contain "detailed factual allegations," but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555. The Court may consider the pleadings and documents attached to the pleadings. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007). Additionally, "[a] court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Emp. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

## DISCUSSION

Plaintiffs set forth a single claim of legal malpractice against Defendants. (Doc. 11, at 24). Defendants seek judgment on the pleadings on this claim. (Doc. 12). This Court grants judgment for Defendants against all three Plaintiffs and dismisses the Complaint.

Timeliness

Plaintiffs' primary challenge to Defendants' motion is that the motion is untimely. (Doc. 14, at 2). Unlike a motion to dismiss, a motion for judgment on the pleadings is to be filed "[a]fter the pleadings are closed". Fed. R. Civ. P. 12(c). Plaintiffs argue "the pleadings cannot be considered 'closed' because the [] Defendants had not filed an Answer before filing the Motion for Judgment on the Pleadings". (Doc. 14, at 2). Defendants reply that the answer and motion were filed simultaneously, and the motion simply ended up reflected on the docket first. (Doc. 15, at 2-

3). The docket reflects the answer to the Amended Complaint and the motion were both filed on September 26, 2022; the motion appears first.

A motion for judgment on the pleadings is reviewed by the district court by the same standard as a motion to dismiss. *Coley*, 799 F.3d at 536–37. When a motion for judgment on the pleadings is filed prematurely, it is not unusual for "the court, in its discretion, [to] construe[] [a] Rule 12(c) motion as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Taylor v. Memphis Police Dep't*, 2014 WL 4925870, at *2 (W.D. Tenn.); *see also Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 841 (N.D. Ohio 2009) (holding there is no prejudice when construing a 12(c) motion as a 12(b)(6), as they have "essentially the same" standards of review). This Court therefore construes Defendants' motion as a Rule 12(b)(6) motion to dismiss. Regardless of how the motion is construed, the outcome herein would be the same.

<u>Plaintiffs Gehard Luxury Homes and Ken Gazian</u>

Defendants argue Plaintiffs Gehard Luxury Homes and Ken Gazian do not have standing to bring a legal malpractice claim, as "[t]hey are not in privity with Defendants as a part of the attorney-client relationship". *Id.* at 6. To establish constitutional standing, a plaintiff must show (1) he has suffered a concrete and particularized, actual or imminent, injury in fact, (2) there is a causal connection between the injury and the conduct brought before the court, and (3) it must be likely that the injury is redressable by a favorable decision by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Defendants cite only constitutional standing case law. As to the constitutional standing argument, an attorney-client relationship or privity is not required to establish an injury in fact; as to any state law standing issue, the rationale is the same as set forth below: without an attorney-client relationship, a party may not maintain a legal malpractice claim.

Establishing legal malpractice under Ohio law requires the plaintiff to show five elements: (1) an attorney-client relationship, (2) a professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause, and (5) damages. *Shoemaker v. Gindlesberger*, 118 Ohio St. 3d 226, 228 (2008).

Defendants argue Plaintiffs Gehard and Gazian did not have an attorney-client relationship with Defendants, as they were not plaintiffs in the state case, Gazian was listed on the LCA only as president of Pierre Investments, Inc., rather than in an individual capacity, and Gehard was not listed on the LCA at all. (Doc. 12, at 5-6). Plaintiffs respond that these three parties are one and the same – that because Gazian is the sole member of Pierre Investments, which does business under the name Gehard Luxury Homes, Defendants' client comprised all three entities. (Doc. 14, at 6).

An attorney is generally liable to only his client, not to third parties. *Stoll v. Kennedy*, 38 Ohio App. 3d 102, 104 (1987). If a plaintiff brings a legal malpractice action against an attorney of whom the plaintiff was not a client, the attorney is only liable to that individual if they are in privity with the client for whom the legal services were performed or if the attorney acted with malice. *Simon v. Zipperstein*, 32 Ohio St. 3d 74, 76 (1987).[2] Privity is "the connection or relationship between two parties, each having a legally recognized interest in the same subject matter." *Shoemaker*, 118 Ohio St. 3d at 1170 (citing Black's Law Dictionary (8th Ed. 2004)). Privity for purposes of legal malpractice is narrow. *See, e.g.*, *Scholler v. Scholler*, 10 Ohio St. 3d 98, 104 (1984) (a parent and a minor child are not in privity); *compare Zipperstein*, 32 Ohio St. 3d at 76-77 (a potential beneficiary of a will is not in privity with the testator), *with Elam v. Hyatt*

---

2. Plaintiffs allege only negligence, not malice.

*Legal Serv.*, 44 Ohio St. 3d 175, 176-77 (1989) (a vested beneficiary of a will is in privity with the testator).

In a business ownership context, individual limited partners are in privity with the limited partnership, because "a partnership is an aggregate of individuals and does not constitute a separate legal entity." *Arpadi v. First MSP Corp.*, 68 Ohio St. 3d 453, 457 (1994). The *Arpadi* court contrasted this with a corporation, which is separate legal entity from its owners, and cited a section from the then-current Ohio Code of Professional Responsibility which stated "[a] lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity." *Id.* at 456 (citing Ohio Code of Prof. Resp., EC 5-18 (superseded eff. February 1, 2007)). The official comment to the current relevant Ohio Rule of Professional Conduct states similarly:

> An organizational client is a legal entity, but it cannot act except through its officers, directors, employees, shareholders, and other constituents. . . . When one of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the lawyer must keep the communication confidential as to persons other than the organizational client as required by Rule 1.6. . . . This does not mean, however, that constituents of an organizational client are the clients of the lawyer.

Ohio Rules of Prof. Cond., Rule 1.13, Organization as Client. Other Ohio courts have cited the *Arpadi* decision as declining to find privity between a corporation and any of its individual constituents. *See, e.g.*, *Omega Riggers & Erectors, Inc. v. Koverman*, 65 N.E.3d 210, 221 (Ohio Ct. App. 2016) ("Significantly, there is no Ohio case that has extended the privity concept to allow a shareholder, who does not have a direct attorney-client relationship with corporate counsel, to sue a corporation's attorney for malpractice. We do not believe we should create one."). As shareholder of the company, Plaintiff Gazian therefore does not have privity with Plaintiff Pierre Investments, Inc. By the same logic, Plaintiff Gehard Luxury Homes, which the Complaint

9

describes as a "Texas based business" (Doc. 1, at 3), is a separate legal entity from Plaintiff Pierre Investments, Inc., and there is no privity between the two. Plaintiffs Gehard and Gazian have not shown the first element of a legal malpractice claim, and their claims must be dismissed.

<u>Plaintiff Pierre Investments, Inc.</u>

Remaining is Pierre Investments, Inc.'s (hereinafter, "Plaintiff") claim of legal malpractice. As outlined above, Plaintiff must show (1) an attorney-client relationship, (2) a professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause, and (5) damages. *Shoemaker*, 118 Ohio St. 3d at 228. Defendants argue Plaintiff has not sufficiently alleged proximate cause or damages. (Doc. 12, at 5). This Court agrees with Defendants.

*Proximate Cause*

Under Ohio law, "[t]he fourth element of a claim for legal malpractice requires a plaintiff to show 'a causal connection between the conduct complained of and the resulting damage or loss.'" *Jones v. Zyndorf*, 2013 WL 4430883, at *6 (N.D. Ohio) (quoting *Vahila v. Hall*, 77 Ohio St. 3d 421, 427 (1997)). There are two evidentiary standards for causation in legal malpractice cases in Ohio: the "case-within-a-case" doctrine and the "some evidence" standard. *See McCarty v. Pedraza*, 17 N.E.3d 71, 77 (Ohio Ct. App. 2014).

"[T]he case-within-a-case doctrine applies if the theory of the malpractice case places the merits of the underlying litigation directly in issue." *Id.* at 78 (citing *Env't Network Corp. v. Goodman Weiss Miller, LLP*, 119 Ohio St. 3d 209, 212-13 (2008)). To show causation under this doctrine, "the plaintiff must establish that he would have been successful in the underlying matter." *Env't Network*, 119 Ohio St. 3d at 213. The "some evidence" standard applies in cases where a plaintiff has "sustained damage or loss regardless of the fact that [he] may be unable to prove that [he] would have been successful in the underlying matter(s)." *Vahila*, 77 Ohio St. 3d at 427. Under

10

this standard, a plaintiff must only show "some evidence of the merits of the underlying claim." *Id.* at 428. There is some disagreement among Ohio courts regarding when each standard applies, but at a minimum, Plaintiff must allege facts that show some merit in the claims underlying this legal malpractice case in order to properly allege that, but for Defendants' malpractice, Plaintiff would have obtained a more favorable result. *See, e.g.*, *Lindsley v. Roe*, 196 Ohio App. 3d 596, 601-02 (2011).

Defendants argue none of Plaintiff's claims were viable for "several purely legal reasons." (Doc. 12, at 4). Plaintiff contends "[t]he causation element is in the omitted facts and the omitted claims that were never litigated" in the underlying state court case. (Doc. 14, at 5). This Court will examine the claims actually litigated by the state trial court as well as the claims Plaintiff alleges should have been brought.

### Litigated Claims

In state court, Plaintiff litigated claims of legal malpractice and fraud against Brandon Rehkopf, Mark Mockensturm, and Mockensturm, Ltd., and claims of fraud, breach of contract, unjust enrichment, promissory estoppel, and deceptive trade practices against CLS Capital and Reynaldo Uballe, Jr.

The legal malpractice claim required a showing of the same elements required in this case: (1) an attorney-client relationship, (2) a professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause, and (5) damages. *Shoemaker*, 118 Ohio St. 3d at 228. The state court dismissed this claim on September 10, 2020, for failure to satisfy the first element, "as there is no evidence or allegation to show the existence of an actionable attorney-client relationship." (Doc. 1-10, at 6). Plaintiff admits this claim had no merit, as the Mockensturm defendants were not Plaintiff's lawyers. (Doc. 11, at 14).

The fraud claim against the Mockensturm defendants required a showing of (1) a representation or, where there is a duty to disclose, concealment of fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such disregard and recklessness as to whether it is true or false as to infer such knowledge, (4) with the intent to mislead another into relying upon it, (5) justifiable reliance upon that representation or concealment, and (6) an injury proximately caused by the reliance. *See Johnson v. Church of the Open Door*, 179 Ohio App. 3d 532, 539 (2008). The state court found the Mockensturm defendants "had no duty to disclose any information regarding CLS to Plaintiff and that any alleged 'reliance' by Plaintiff on such alleged misrepresentations was wholly unjustified under the circumstances." (Doc. 1-13, at 13). The state court cited case law holding "that ordinarily in business where parties deal at arm's length, each party is presumed to have opportunity to ascertain relevant facts available to others similarly situated [sic] and, therefore, neither party has a duty to disclose material information to the other . . . there was no mutual understanding that a special trust or confidence had been reposed." *Id.* at 15 (citing *Cleveland Constr., Inc. v. Roetzel & Andress, LPA*, 2011 WL 916922, at *5-6 (Ohio Ct. App.)). Plaintiff lost this claim on summary judgment on March 23, 2021.

Plaintiff's claim of fraud against the CLS defendants required a showing of the same elements. The fraud claims against the CLS defendants arose out of the same facts as Plaintiff's breach of contract claim, and under Ohio law, "[a] tort claim based upon the same actions [as] those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 151 (1996); *see also Gervace v. Master Foods, Inc.*, 1978 WL 218137, at

12

*5 (Ohio Ct. App.) ("An unfulfilled promise to do something in the future[] gives rise to an action for breach of contract, not a fraudulent misrepresentation."). And the LCA contained an integration clause stating it "supersedes all prior correspondence, other agreements, and oral and other communications relating to financing arrangements between Borrower and Lender." (Doc. 11-1, at 1).

The state court held in its March 23, 2021, order that to the extent the fraud claim arose from duties governed by the LCA, it was barred by tort-contract preclusion, and to the extent it arose from communication between the parties prior to signing of the LCA, it was barred by the contract's integration clause, the parol evidence rule (which holds "a written contract which appears to be complete and unambiguous on its face will be presumed to embody the final and complete expression of the parties' agreement," *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App. 3d 801, 808 (2000)), and the "direct contradiction" rule (which holds "a fraud claim may not be maintained where the alleged fraud is directly contradicted by a signed writing," *id.*). (Doc. 1-13, at 27).

As to Plaintiff's unjust enrichment and promissory estoppel claims, the state court noted that these "are equitable claims that operate only in absence of an express contract" and dismissed them as barred by the existence of the LCA. *Id.* at 28 (citing *Spalsbury v. Gill Constr. Co.*, 2018 WL 3233679, at *2 (Ohio Ct. App.)).

To prevail on an Ohio Deceptive Trade Practices Act claim, a plaintiff must show a false or misleading statement of fact by the defendant is material and "deceives or tends to deceive a substantial portion of the intended audience". *Her, Inc. v. RE/MAX First Choice, LLC*, 468 F. Supp. 2d 964, 979 (S.D. Ohio 2007). The state court determined the purportedly false statements cited in support of Plaintiff's deceptive trade practices claims were identical to those offered in

13

support of the fraud claim, and included statements that: the loan funding was approved and guaranteed; the project would not need further approval; legal counsel had approved the loan; and CLS Capital was the lender. (Doc. 1-13, at 29). The court found that because by the express terms of the LCA itself, the loan was conditional (Doc. 11-1, at 1), subject to express conditions precedent (*id.* at 4), in need of additional documents executed before finalization of the loan (*id.* at 2), and offered by CLS Capital "or assigns" (*id.* at 1), Plaintiff, nor any other reader, could have been deceived in the ways Plaintiff claimed. (Doc. 1-13, at 30). The state court dismissed the claim.

Also in the March 23, 2021, order, the court dismissed Plaintiff's breach of contract claim against Uballe, Jr., "as there is no dispute that Uballe is not a signatory to the Loan Commitment." *Id.* at 32.

Plaintiff states in the Amended Complaint that the final remaining claim, breach of contract against CLS Capital, was dismissed in October 2021. (Doc. 11, at 23). This decision by the state court is not attached to the Amended Complaint. But "[a] court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *Ernst & Young, LLP*, 336 F.3d at 501. The Sixth Circuit takes "a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). Documents "referred to in a complaint and central to the claim, [which are] attached to a motion to dismiss form part of the pleadings." *Id.* The state court held on October 28, 2021, that because it had found at trial – in agreement with Plaintiff's position – that CLS Capital did not exist as an actual or legal entity, no lawsuit could be maintained against it, and the breach of contract claim must be dismissed. *Pierre Inv., Inc.*, 2021 WL 9978551, at *13-14 (citing *Hartley v. Clearview Equine Veterinary Servs.*, 2005 WL 435169, at *2 (Ohio Ct. App.) ("Any judgment, including default, rendered solely

against a defendant which is not an actual or legal entity, is void, since the court has no personal jurisdiction over the non-named actual legal entity.")).

While Plaintiff contends Defendants committed a variety of legal errors detrimental to the claims filed in state court, including failing to conduct thorough factual discovery (*see, e.g.*, Doc. 11, at 5-7, 10-12); failing to timely make pertinent filings (*id.* at 8-11, 15); failure to prepare for trial and withdrawing as counsel five weeks before a scheduled jury trial (*id.* at 13); failure to assert defenses to a counterclaim (*id.* at 18-19); and generally failing to prioritize the case (*id.* at 20-21), this Court finds upon review of the state court judgments that no facts or filings would have changed the outcome of dismissal of all Plaintiff's claims.

Plaintiff admits the legal malpractice claim could not succeed. *Id.* at 14. The fraud claims were barred by the legal doctrine of tort-contract preclusion and the integration clause of the contract itself, which could not have been changed by additional discovery or other legal theories. The unjust enrichment and promissory estoppel claims were inappropriate given the existence of an express contract. While Plaintiff argues more thorough discovery and trial preparation might have resulted in testimony that led to a favorable decision on the deceptive trade practices claim, once again, the express text of the contract itself contradicts Plaintiff's claim. And finally, a non-signatory to a contract and a nonexistent entity cannot be sued for breach of contract; no legal strategy could have overcome these barriers.

Even under the "some evidence" standard rather than the "case-within-a-case" standard, to prove proximate cause Plaintiff must plead facts showing "a result was more likely than not to have been cause by [the attorney's] negligence." *S. Elec. Supply Co., Inc. v. Lienguard, Inc.*, 2007 WL 4224225, at *6 (S.D. Ohio). With regard to the claims actually litigated in state court, Plaintiff has not pled such facts and therefore cannot show the requisite causation.

*Unlitigated Claims*

Plaintiff argues "Defendants fail to recognize the effect the poorly drafted complaint had on the outcome of this case" and "[t]he causation element is in the omitted facts and the omitted claims that were never litigated" in the underlying state court case. (Doc. 14, at 3, 5). This Court therefore examines facts pled by Plaintiff amounting to unfiled claims Plaintiff contends might have succeeded.

Plaintiff states Defendants failed to file the breach of contract claim against "the other two collectible former directors [of CLS Capital] named Helen Odum and Redel V. Napper, III". (Doc. 11, at 15). But just as Uballe, Jr., could not be a party to the breach of contract claim because he was not a party to the contract, neither could any former directors of CLS Capital, as "CLS Capital Group Inc. . . . or assigns" was the only signatory to the contract other than Plaintiff. *See, e.g.*, *Quest Workforce Sol., LLC, v. Job1USA, Inc.*, 75 N.E.3d 1020, 1030 (Ohio Ct. App. 2016) (holding a contract must exist between the parties for a plaintiff to maintain a breach of contract claim).

Plaintiff states Defendants "failed to investigate and add a claim for telecommunication fraud after Gazian provided proof that Uballe used the internet to entice Plaintiffs to send funds under the guise that Uballe and[/]or CLS Capital Group[,] Inc[.] was a lender." *Id.* at 5. Like any other communications before and outside the contract, the LCA's integration clause, the parol evidence rule, and the "direct contradiction" rule as cited by the state court and articulated in *CompuServe, Inc.*, 138 Ohio App. 3d at 808, would bar this claim.

Plaintiff states Defendants "failed to advise Plaintiffs that Gehard and Gazian could be named as additional plaintiffs due to lost opportunities, lost earnings, lost profits, and lost real estate commissions and other damages." (Doc. 11, at 6). Plaintiff has pled no facts which allege Gehard and Gazian had an attorney-client relationship with Mockensturm, were parties to the LCA

with CLS Capital, had fraud claims arising under any facts which would escape the integration clause or tort-contract preclusion, had deceptive trade practices claims arising under any facts which did not expressly contradict the LCA, or met the elements for unjust enrichment or promissory estoppel claims.

Plaintiff states Defendants "failed to file a separate claim of fraud against Mockensturm, Ltd[.] with specificity". (Doc. 11, at 8). The state court amended complaint included a fraud claim against Mockensturm. (Doc. 11-15, at 17). Furthermore, the fraud claim against Mockensturm was not dismissed for lack of specificity; it was dismissed because "neither party has a duty to disclose material information to the other . . . there was no mutual understanding that a special trust or confidence had been reposed." (Doc. 1-13, at 15).

Plaintiff states Defendants "failed to support the third-party claim for legal negligence against Mockensturm Ltd." and instead "provided cases that do not support third-party legal malpractice claims." (Doc. 11, at 8). A "third-party legal negligence" claim is simply a legal malpractice claim, which, as all legal malpractice claims in Ohio do, requires an attorney-client relationship or privity. *See Zipperstein*, 32 Ohio St. 3d at 76. There is no case law with which Defendants could have contradicted this rule.

Plaintiff states Defendants "failed to properly plead . . . [u]njust [e]nrichment against Uballe as a former shareholder of CLS Capital Group[,] Inc[.,] and CLS Capital Group[,] Inc[.,] for possession of the $75,000 that they did not return to [Plaintiff] upon the default of CLS Capital Group[,] Inc." (Doc. 11, at 12). The $75,000 was conveyed in accordance with the terms of the LCA (Doc. 11-1, at 3), and as the state court noted, unjust enrichment operates "only in absence of an express contract." (Doc. 1-13, at 28).

On the face of the facts pled in the Amended Complaint, none of these claims would have been viable. That Defendants did not plead them in the underlying state court action does not change the outcome. Plaintiffs have therefore failed to adequately plead causation as required by a legal malpractice action, and its claims against Defendants fail.

*Damages*

While it is unnecessary to reach the issue of damages, the Court finds Plaintiff fails to show this element of the malpractice claim as well. Unlike most other types of civil actions, under Ohio law a plaintiff to a legal malpractice action must, in the course of showing damages, show collectability – "that the attorney [Plaintiff] is suing has indeed injured [it] through neglecting to properly handle a lawsuit that would have generated recompense. And [its] injury is measured by what [it] actually would have collected." *Paterek v. Petersen & Ibold*, 118 Ohio St. 3d 503, 509 (2008). Defendants argue that "[a]s a blank check company, CLS has no revenue and no business operations" and is therefore not collectable. (Doc. 12, at 16). Plaintiff argues it "still had a potential avenue for relief" because "Mr. Uballe, Mr. Napper, Ms. Odum, Mr. Mockensturm, [and] Mr. Rehkoph could have been found personally liable for their fraud in this scheme." (Doc. 14, at 4-5).

A key tenet of Plaintiff's case, by the facts asserted in the Amended Complaint, is that CLS Capital was entirely defunct. *See* Doc. 11, at 12. Defendants assert CLS Capital was judgment proof by virtue of its status as a special purposes acquisition company ("SPAC"), otherwise known as a "blank check company". (Doc. 12, at 15-16). The state trial court judgment, affirmed by the state appellate court, found that CLS Capital no longer existed. *Pierre Inv., Inc.*, 2021 WL 9978551, at *13-14. Such a party is plainly uncollectable.

Plaintiff argues the former directors of CLS Capital – Uballe, Napper, and Odum – could have been collectable, had they been named. (Doc. 11, at 15; Doc. 14, at 5). This Court discussed *supra* why they could not have been named: these individuals were not party to the contract upon which all claims in the underlying suit were based. A corporation is a legal entity separate from the individuals running the corporation. *See, e.g.*, *Lambert v. Kazinetz*, 250 F. Supp. 2d 908, 913-14 (S.D. Ohio 2003). Additionally, as Defendants accurately point out, "piercing the corporate veil" to reach individuals rather than the corporate entity itself for purposes of damages is a remedy, not a cause of action, and whether it is necessary in most cases "depends on whether Plaintiff succeeds on its underlying claims [including] breach of contract and unjust enrichment." *MidAmerican Distrib., Inc., v. Clarification Tech., Inc.*, 807 F. Supp. 2d 646, 683 (E.D. Ky. 2011); *see also Graham v. City of Lakewood*, 113 N.E.3d 44, 58 (Ohio Ct. App. 2018) ("[p]iercing the corporate veil or alter ego liability is a remedy, not an independent cause of action")). In a legal malpractice action in Ohio, Plaintiff must demonstrate collectability as an element of the case up front and cannot rely upon the possibility of piercing the veil as a remedy later to do so.

Plaintiff has therefore failed to plead facts showing collectable damages in this case. Plaintiff's claim fails for this reason in addition to failing to show causation as discussed above.

### CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Judgment on the Pleadings (Doc. 12) be, and the same hereby is, GRANTED.

  s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

19