**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

**PIERRE INVESTMENTS, INC.,**

Plaintiff,

v.

**ANSPACH MEEKS ELLENBERGER, LLP, et al.,**

Defendants.

CASE NO. 3:22 CV 932

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Pending before the Court in this legal malpractice case is a Motion for Summary Judgment brought by Defendants Anspach Meeks Ellengerger, LLP, Anspach Law, and Kent D. Riesen (collectively "Defendants"). (Doc. 48). Plaintiff Pierre Investments, Inc., opposed (Doc. 49), and Defendants replied (Doc. 50). Further pending before the Court are several evidentiary motions. Defendants first filed a Motion *in limine* seeking exclusion of testimony offered by Plaintiff's damages expert. *See* Doc. 34. This Motion is fully decisional. *See* Docs. 39, 43. Defendants also moved to strike a supplemental expert report. *See* Doc. 38. This Motion too, is fully decisional. *See* Docs. 39, 42. The final decisional motion is Plaintiff's Motion for Judicial Notice identifying certain matters of public record relevant to the dispute now before the Court. *See* Docs. 51, 54, 55. Defendants also filed a Motion to Deem Requests Admitted, *see* Doc. 40, and a Motion to Strike, wherein Defendants argue Plaintiff's post-hoc deposition corrections do not comply with Federal Civil Rule 30, *see* Doc. 46. Plaintiff did not oppose either of these last two Motions.

Jurisdiction is proper pursuant to 28 U.S.C. § 1332. For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment.

## BACKGROUND

Factual Background

This case stems from Defendants' representation of Plaintiff in litigation related to Plaintiff's efforts to obtain financing for a home development project in Texas. In 2018, Plaintiff entered into a conditional contractual agreement with CLS Capital Group, Inc. ("CLS") to obtain a $10 million loan to finance the development project. *See* Doc. 45-18, at 1. Ken Gazian, Plaintiff's president, signed on its behalf. *Id.* at 6. Reyanaldo Uballe Jr., listed as president of CLS, signed on its behalf. *Id.* The agreement included a requirement that Plaintiff pay an up-front "Commitment, Administrative, Risk Management & Legal" fee in the amount of $75,000. *Id.* at 3. Up to 20% of this fee would be refunded in the event CLS declined to issue the loan due to its "inability to verify or confirm project information" provided by Plaintiff. *Id.* Plaintiff paid the fee, CLS declined to issue the loan, and Plaintiff never received its refund. *See* Plaintiff Dep., Doc. 45-1, at 89–90, 195.[1]

Plaintiff then hired Defendants to represent it in its "claim for damages regarding Uballe and Mockensturm law firm"—the law firm which represented CLS during formation and execution of the conditional loan agreement. *See* Doc. 45-19, at 1; Plaintiff Dep., Doc. 45-1, at 80. Eventually, Plaintiff sued CLS, Uballe, Mockensturm, LTD, and two attorneys from the Mockensturm firm in the Lucas County Court of Common Pleas for, *inter alia*, breach of contract, fraud, legal malpractice, and unjust enrichment. *See* Doc. 1-15, at 17–24. The trial court ultimately granted summary judgment as to the claims against the Mockensturm parties and with respect to

1. Ken Gazian testified as the corporate representative of Plaintiff Pierre Investments, Inc., in a deposition taken pursuant to Federal Civil Rule 30(b)(6).

all claims against CLS and Uballe but for Plaintiff's breach of contract claim against CLS. *See* Doc. 47-2, at 1–2. As is relevant here, the trial court found the following: (1) Uballe could not be liable on the conditional loan agreement, as he signed on behalf of CLS and there were no facts supporting piercing the corporate veil; (2) Plaintiff failed to adduce evidence CLS or Uballe engaged in fraud during the contract's formation; and (3) Plaintiff's unjust enrichment claims failed due to the presence of a binding written agreement. *See id.* at 24–28.

Before trial on the remaining breach of contract claim, Defendants moved to withdraw as Plaintiff's attorneys. The motion claims Gazian, on behalf of Plaintiff, informed Defendants "he would like to retain new counsel and has discussed this case with new counsel." (Doc. 47-1, at 1). Defendants further requested the trial court delay the scheduled jury trial to permit Plaintiff additional time "to retain new counsel and have new counsel enter an appearance." *Id.* at 2. After a telephonic hearing, the trial court granted Defendants' motion to withdraw as Plaintiff's counsel but reaffirmed the existing jury trial date. *See* Doc. 45-9, at 1. There were fewer than eight weeks between the date of the order granting withdrawal and the scheduled start of the jury trial. *See id.*

At some point prior to trial, the court took judicial notice of the fact that CLS "is no longer in existence and became inoperative and void as of March 1, 2012." *Pierre Invs., Inc. v. CLS Capital Grp.*, 202 N.E.3d 870, 875 (Ohio Ct. App. 2022). After a bench trial, the court rendered a verdict in favor of CLS on Plaintiff's sole remaining breach of contract claim; the state appellate court affirmed and declined to revive Plaintiff's other claims. *See id.* at 888–89. The state appellate court reasoned Plaintiff's breach of contract claim failed because CLS's status as a nonexistent entity meant it lacked the legal capacity to be sued. *See id.* This lawsuit followed.

Procedural History

Plaintiff originally brought against Defendants a single claim of legal malpractice along with Gazian and Pierre Investments, Inc. d/b/a Gehard Luxury Homes (the "original Plaintiffs"). *See generally* Doc. 11. Therein, the original Plaintiffs alleged Defendants engaged in dozens of acts in connection with the underlying suit against CLS, Uballe, and the Mockensturm parties constituting legal malpractice. *See id.* at 14–19. Two acts remain relevant here: (1) Defendants' purported failure to investigate CLS and discover its defunct corporate status; and (2) Defendants' decision to withdraw from their representation of Plaintiff prior to trial. *See* Doc. 49, at 2–5 (arguing in opposition only that these two acts constituted breach of Defendants' representational duties).

Defendants filed a Motion for Judgment on the Pleadings, *see* Doc. 12, which the Court granted in its entirety, *see* Doc. 19. Plaintiff appealed, *see* Doc. 21, and the Sixth Circuit affirmed in part and reversed in part, *see Pierre Invs. Inc.*, *v. Anspach Meeks Ellenberger, LLP*, 2024 WL 1856677 (6th Cir.). Specifically, the court affirmed dismissal of Gazian and Gehard Luxury Homes' malpractice claim due to the absence of privity between these parties and Defendants. *See id.* at *4. However, the court reversed with respect to Plaintiff's claim, as "at least some claims against Uballe" would have survived summary judgment in the underlying litigation had Defendants discovered CLS's defunct status. *See id.* at *6–7. Specifically, Plaintiff could have either sued Uballe for breach of contract, as one who enters into a contract on behalf of a defunct corporate entity may be held personally liable thereon, or voided the conditional loan agreement and pursued tort claims against Uballe if he fraudulently induced Plaintiff's assent. *See id*. The Court thus reversed and remanded as to Plaintiff's malpractice claim, with instructions to "consider

the effects of CLS's defunct status on [Plaintiff's] underlying claims against Uballe." *Id.* at *8. Post-remand, the Parties engaged in discovery and dispositive motion practice.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any factual matter in dispute; the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

## DISCUSSION

Initially, the Court notes two merits-adjacent grounds on which, if so inclined, it could grant Defendants' Motion for Summary Judgment. First, Plaintiff's opposition to Defendants' Motion for Summary Judgment does not include a single formal citation to the evidentiary record,

let alone a comprehensive factual statement of the case. *See generally* Doc. 50. This is insufficient as, once Defendants initially demonstrate an absence of evidence to support Plaintiff's claim, the burden is on Plaintiff to specifically point the Court to the place in which a material dispute of fact lies within the record. *See Anderson*, 477 U.S. at 257; *Cont'l Refin. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 350 F. Supp. 3d 601, 609 (E.D. Ky. 2018) ("Simply put, the Court need not, outside the scope of party advocacy, 'search the entire record to establish that it is bereft of a genuine dispute of material fact;' judges, after all, 'are not like pigs, hunting for truffles that might be buried in the record.'" (quoting *Emerson v. Novartis Pharm. Corp.*, 466 F. App'x 733, 736 (6th Cir. 2011))). At most, Plaintiff offers nonspecific, uncited gestures towards the record. *See, e.g.*, Doc. 50, at 6 (asserting, without citation, "[Plaintiff] repeatedly asked Defendants to prepare the case, complete discovery, and protect his interests").

Second, Plaintiff failed to timely respond to Defendants' first set of requests for admission. *See* Doc. 35. Defendants served these requests on September 19, 2025. *See id.* Under Federal Civil Rule 36, Plaintiff had 30 days to respond to the requests before the matter would be deemed admitted. Fed. R. Civ. P. 36(a)(3). Plaintiff thus had until Monday, October 19, 2025, to respond to these requests and avoid admission. Plaintiff did not do so, and similarly did not oppose Defendants' Motion to deem these requests admitted. *See* Doc. 40. Plaintiff has not moved this Court to withdraw the admissions or otherwise directly contested them in its summary judgment briefing. *See generally* Doc. 50. If deemed admitted, certain of the facts contained in Defendants' requests would plausibly result in summary judgment in their favor. *See, e.g.*, Doc. 40-1, at 8–9 ("Admit that [Plaintiff] requested Defendants withdraw on June 2, 2021.").

Despite Plaintiff's failure to offer argument to the Court on this matter, the Court notes Defendants served these requests for admission just ten days before the general discovery deadline

of September 29, 2025, set by the Court's amended case management order. *See* Doc. 24; Non-Document Order dated July 1, 2025. Thus, Plaintiff's 30-day window to respond under Rule 36 extended beyond the discovery cutoff. In similar circumstances, courts are split as to whether the requests may be deemed admitted. *Compare Charafeddine v. Carson Freight, LLC*, 2026 WL 1866699, at *2 (E.D. Mich.) ("Defendants did not serve their second set of requests for admission until five days before the deadline. Considering the information requested would not be due for weeks after the expiration of the discovery deadline, Plaintiffs did not have sufficient time to respond within that window." (citation modified)), *with Leach v. Quality Health Servs., Inc.*, 162 F.R.D. 40, 41–42 (E.D. Penn. 1995) (ordering the plaintiffs to respond to requests for admission served roughly two weeks before the close of discovery). Rather than take a stand on one side of this divide, the Court will instead resolve Defendants' Motion for Summary Judgment on the direct merits.

<u>Legal Malpractice</u>

To prevail on a legal malpractice claim under Ohio law, the plaintiff must demonstrate: "(1) an attorney-client relationship, (2) a professional duty arising from that relationship, (3) a breach of that duty, (4) proximate cause, and (5) damages." *Pierre Invs.*, 2024 WL 1856677, at *3 (citing *Shoemaker v. Gindlesberger*, 887 N.E.2d 1167, 1169–70 (Ohio 2008)). With respect to the fourth element, Ohio law recognizes two distinct proximate cause standards applicable to malpractice claims. First is the "case-within-a-case" standard, which applies where a plaintiff claims they would have succeeded on some underlying claim for relief absent their attorney's negligence. *See id.* at *5 (citing *Env't Network Corp. v. Goodman Weiss Miller, L.L.P.*, 893 N.E.2d 173, 177 (Ohio 2008)). This standard requires the plaintiff to "establish that he would have been successful in the underlying matter" by a preponderance of the evidence. *See Env't Network Corp.*,

893 N.E.2d at 177. Contrarily, the "some-evidence" standard applies where the plaintiff's claimed damages do not stem from the failure to obtain relief on a legal claim. *See Pierre Invs.*, 2024 WL 1856677, at *5 (collecting cases). For example, an attorney that negligently fails to preserve a settlement opportunity may trigger application of the "some evidence" standard as a plaintiff can often obtain a settlement even if their claim is not strictly likely to succeed on the merits at trial. *See Vahila v. Hall*, 674 N.E.2d 1164, 1169–70 (Ohio 1997). Thus, in this circumstance, the plaintiff suffers harm caused by their attorney's negligence even if they could not demonstrate their claim would have prevailed on the merits. *See id.* at 1170.

In the former scenario, where a plaintiff's theory of damages posits the attorney's negligence caused the plaintiff to lose out on an otherwise meritorious legal claim, the "collectability" of the defendant in the underlying action "is an element of the plaintiff's case that must be proved by the plaintiff." *Paterek v. Petersen & Ibold*, 890 N.E.2d 316, 322 (Ohio 2008). In other words, where a plaintiff argues their attorney's negligence deprived them of monetary recovery in the underlying action, their "injury is measured by what [they] actually would have collected." *Id.* Where there was nothing to collect from the defendant in connection with underlying action, the attorney's negligence did not cause the plaintiff's damages, and summary judgment is proper.

Here, Plaintiff limits its opposition to Defendants' Motion to just two distinct acts or omissions allegedly constituting breach. *See* Doc. 49, at 2–5 (arguing Defendants' failure to discover CLS's defunct status and their decision to withdraw prior to trial constituted malpractice). The Court discusses each in turn.

*Failure to Discover*

Plaintiff claims Defendants' failure to discover CLS's defunct corporate status "may have changed the outcome" of the underlying litigation, as identified by the Sixth Circuit. *See* Doc. 50, at 2 (citing *Pierre Invs.*, 2024 WL 1856677, at *6–7). That is, had Defendants "timely discovered that CLS was a defunct corporation, [Plaintiff] could have sued Uballe for breach of contract" and maintained other tort claims against him. *See Pierre Invs.*, 2024 WL 1856677, at *6–7. Because this theory of harm necessarily relies on Plaintiff having meritorious breach of contract and related tort claims against Uballe, Plaintiff must put forth evidence demonstrating Uballe was collectible. *See Paterek*, 890 N.E.2d at 322.[2]

Defendants argue all evidence indicates Uballe was not collectible during the underlying litigation and identify a lack of record evidence establishing the contrary. *See* Doc. 48, at 19–20. Specifically, they identify public court records indicating Uballe previously defaulted on his mortgage and lost his home in 2012, *see Bank of N.Y. Mellon v. Uballe*, 2017 WL 4334179 (Ohio Ct. App.), and email communications from Gazian to Defendants suggesting they would not be able to collect on any judgment obtained from trial in the underlying litigation, *see* Doc. 45-8, at 4. With respect to this latter piece of evidence, however, it appears this email most plausibly refers to CLS's collectability as, by the time this email was sent, all claims against Uballe had been dismissed from the underlying litigation. *See* Doc. 47-2, at 24–28.

Plaintiff offered only cursory resistance to Defendants' collectability argument. Plaintiff states: "Defendants argue Uballe was uncollectible, but the depositions show he held ownership

---

2. Plaintiff's theory of damages flowing from this purported breach also demands application of the "case-within-a-case" proximate cause standard. *See Paterek*, 890 N.E.2d at 321; *Pierre Invs.*, 2024 WL 1856677, at *6 n.12 (explaining the "'case-within-a-case' standard may apply best" where "the complaint alleges that the claim would have been successful but for the negligence").

interests, controlled lending entities, and had access to investor capital, and multiple bank accounts." (Doc. 49, at 7). But Plaintiff does not cite any deposition, identify these ownership interests, or put a name or number on any bank account. Plaintiff vaguely gestures to testimony from Uballe "[i]n the underlying litigation" admitting he controlled active financial companies, including CLS, which "had the financial ability to fund multimillion-dollar loans." *Id.* But Plaintiff did not provide this testimony to the Court. Indeed, the sole testimony from Uballe now before the Court is a single page from a transcript of his deposition in the underlying litigation. *See* Doc. 1-7; Doc. 11-7. This page makes no mention of Uballe's assets or his personal access to funds controlled by CLS or other "lending entities."

Further, after summary judgment briefing concluded, Plaintiff filed a Motion for Judicial Notice identifying public court records purportedly establishing Uballe's collectability. *See* Doc. 51. These records consist of: (1) a default judgment obtained against one April Lieberman in an unrelated lawsuit in the United States District Court for the Northern District of Georgia; (2) an order granting the release of deposited funds from the United States District Court for the Western District of Tennessee to Uballe and El Torro Investments, LLC, indicating they received $115,864.43 in satisfaction of the default judgment; and (3) a "verified complaint" in the Northern District of Georgia case purporting to establish Uballe's personal capital contributions to real property investments and his status as El Torro Investments, LLC's sole member. *See* Doc. 51, at 4–6; Default Judgment, *El Torro Invs., LLC v. Lieberman*, No. 21-cv-4679 (N.D. Ga. February 10, 2022); Complaint, *El Torro Invs., LLC v. Lieberman*, No. 21-cv-4679 (N.D. Ga. November 11, 2021); Order Granting Release of Funds, *El Torro Invs., LLC v. Lieberman*, No. 23-cv-3 (W.D. Tenn. May 27, 2025); *see also* Docs. 51-1, 51-2, 51-3.

Even if Plaintiff's Motion was timely,[3] the Court is not persuaded that these court records create a genuine dispute of fact regarding Uballe's collectability during the underlying litigation. Most importantly, the default judgment and order releasing funds to Uballe and El Torro Investments in no way specify how the funds will be divided between the two, if at all. *See* Doc. 51-2, at 1-2; Doc. 51-3. While Uballe is named as a plaintiff in this action, nothing in these public records suggests, let alone establishes a genuine factual dispute over, whether Uballe would have personal access to these funds in order to satisfy an unrelated judgment in the underlying litigation. This is especially true given the fact that Uballe did not file a notice of receipt of these funds until August 2025, roughly four years after the bench trial in the underlying litigation. *See* Notice of Receipt, *El Torro Invs., LLC v. Lieberman*, No. 23-cv-3 (W.D. Tenn. August 21, 2025); *Pierre Invs.*, 202 N.E.3d at 875. Thus, these court records are insufficient to demonstrate that, during the underlying litigation, Uballe had "assets from which a judgment could be collected" if Defendants had discovered CLS's defunct status and pursued more claims directly against Uballe. *Paterek*, 890 N.E.2d at 318. They fail to rise beyond speculation where Plaintiff does not identify what percentage, if any, of the recovery Uballe would have personal access to such that the funds could have been used to satisfy a judgment against him in the underlying litigation.

While the complaint in the Northern District of Georgia case against Lieberman alleges Uballe is the sole member of El Torro Investments, and Uballe had the financial capacity to inject $160,000 in capital to El Torro Investments, these allegations are "subject to reasonable dispute" and thus not judicially noticeable. Fed. R. Evid. 201(b). First, contrary to Plaintiff's assertion, the complaint in the Northern District of Georgia case is in no way "verified." *See* Doc. 51, at 5; Doc.

3. As Defendants correctly note, the latest of these court records originated in May 2025, roughly four months before the close of discovery and nearly a year before Plaintiff filed the Motion for Judicial Notice. *See* Doc. 54, at 6–7.

51-1, at 13–15 (omitting any mention of verification and lacking Plaintiff's signature). Second, the factual allegations contained within the complaint were deemed admitted solely due to Lieberman's failure to timely respond to the complaint or "establish excusable neglect" for such failure. *See Uballe v. Lieberman*, 2024 WL 5406991, at *1 (6th Cir.). And while a default judgment operates as a final judgment on Plaintiff's claims, it does not formally dictate the truth of the allegation in Plaintiff's Complaint or serve as a full adjudication on the merits. *See, e.g.*, *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986) (explaining a "strong preference for trials on the merits" as opposed to entering a default judgment); *Willaims v. New Orleans Pub. Serv., Inc.*, 728 F,2d 730, 733–34 (1984) (explaining "the grant of a default judgment precludes consideration of the merits of a case"). Thus, it cannot be said that the factual allegations in Uballe and El Torro Investments' unverified complaint are "not subject to reasonable dispute." Fed R. Evid. 201(b). The Court declines to take judicial notice of the factual allegations contained in the complaint. *See* Doc. 51-1.

As outlined above, Plaintiff fails to identify any particular assets Uballe retained either during or after the pendency of the underlying litigation. Further, Plaintiff fails to put forth any evidence pertaining to Uballe's "future ability . . . to pay off a judgment" if he contemporaneously lacked the assets sufficient to satisfy any hypothetical judgment rendered against him in the underlying litigation. *See Paterek*, 890 N.E.2d at 322. Plaintiff identifies no income stream, pending windfalls, or expert testimony supporting Uballe's future ability to pay off a judgment stemming from the underlying litigation. *See id.* In sum, Plaintiff falls short of its burden to point to disputes of fact regarding Uballe's collectability. Plaintiff points to no specific assets, ownership interests, bank accounts, income streams, or other means of payment established by the record. Accordingly, Plaintiff fails to meet its affirmative burden to put forth evidence of Uballe's

collectability and there is thus "no genuine issue as to whether [Defendants] proximately caused" any damage to Plaintiff, even if Defendants' negligence prevented Plaintiff from bringing additional claims against Uballe. *Bogart v. Gutmann*, 115 N.E.3d 711, 718 (Ohio Ct. App. 2018).

*Withdrawal*

Next, Plaintiff contends Defendants committed malpractice by withdrawing weeks before the scheduled trial in the underlying litigation without having drafted a trial brief, witness or exhibit lists, and with "unresolved legal issues" remaining. *See* Doc. 49, at 5–6. Plaintiff's proffered expert Brenden Kelley opines Defendants' "abrupt withdrawal deprived [Plaintiff] of effective representation at a critical juncture, resulting in disorganized trial preparation." (Doc. 28-3, at 5). Defendants contend they did not breach any applicable standard of care when they successfully moved the trial court for permission to withdraw from the underlying litigation. *See* Doc. 48, at 12–14. The Court agrees.

Here, there is no material dispute of fact that Plaintiff itself requested Defendants' withdrawal. Gazian emailed Defendants indicating he spoke to other attorneys and believed he was "being legally screwed" in the underlying litigation. *See* Doc. 45-8, at 2. He further stated:

> If you/your firm can no longer defend my interests in this case for whatever reasons, but not excluding continuous threats receiving for from (sic) defense counsels or elsewhere, then I will need you to file a motion to request extension of the trial date due to your voluntary withdrawal until I attain a new counsel who will notify the court of new representations and new decisions.

*Id.* Defendant Riesen averred he determined, along with his partners, that the attorney/client relationship had deteriorated and that Defendants "must seek leave of [c]ourt to withdraw" from the underlying litigation. (Doc. 47, at 4). The motion to withdraw filed with the trial court similarly asserts communications from Gazian "informed [Defendants] that he would like to retain new counsel." *Id.* at 7. The trial court held a telephonic hearing to resolve this motion. *See Id.* Doc. 45-

9. There, Gazian did not dispute Defendants' interpretation of the aforementioned email, did not dispute the presence of irreconcilable differences between the Parties, and did not object to the motion. *See* Doc. 47, at 5. The court granted Defendants' request to withdraw. *See* Doc. 45-9, at 1. Thus, even accepting Plaintiff's characterization of Gazian's email as "conditional," there is no material dispute over the fact that Defendants sought and obtained Court permission to withdraw with no objection from Plaintiff. Plaintiff puts forth no contrary evidence suggesting Defendants' decision to seek withdrawal was itself against Plaintiff's wishes, let alone sufficiently negligent so as to create malpractice liability.

Nor does Plaintiff offer evidence suggesting the manner in which Defendants withdrew constituted a breach of a duty owed to Plaintiff. The sole authority Plaintiff invokes to establish Defendants' duty is Ohio Rule of Professional Conduct 1.16(d), which requires lawyers to "protect a client's interest" while withdrawing, including by "giving due notice to the client, allowing *reasonable* time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules." *See* Doc. 49, at 5–6; *Krischbaum v. Dillon*, 567 N.E.2d 1291, 1301 (Ohio 1991) ("While the failure to comply with general rules of conduct . . . will not ordinarily constitute negligence *per se*, it is a circumstance that can be considered, along with other facts and circumstances, in determining whether the actor has acted with . . . due care."). Without citation to facts in the record, Plaintiff argues Defendants' action fell short of this standard by withdrawing weeks before trial "despite missing motions, no trial brief, no exhibit list, unresolved legal issues, and [t]rial rapidly approaching." (Doc. 49, at 5).

But uncontested facts identified by Defendants establish the opposite. It is undisputed that, through the hearing held to discuss Defendants' motion withdraw, Plaintiff was on notice of the need to find another attorney. Indeed, this need stemmed directly from Plaintiff's own

communications with attorneys other than Defendants. *See* Doc. 45-8, at 2; Doc. 47, at 4. Further, in his affidavit, Defendant Reisen averred that, after withdrawing as Plaintiff's counsel, he "worked with [Plaintiff's] successor counsel, Cynthia M. Rodgers . . . to transfer [his] complete file pertaining to [his] representation of [Plaintiff]." (Doc. 47, at 5). Finally, the bench trial in the underlying litigation began on September 20, 2021, nearly three months (rather than five weeks) after Plaintiff's successor counsel first entered in an appearance in the case. *See* Doc. 45-20; *Pierre Invs.*, 202 N.E.3d at 875. Plaintiff points to no evidence creating a dispute of fact regarding Defendants' compliance with Ohio Rule of Professional Conduct 1.16 or any other applicable standard of conduct. Nor can Plaintiff's expert's "conclusory assertion about the legal issues" which failed to outline the "applicable standard of care" create genuine dispute on this issue. *EQT Prod. Co. v. Philips*, 767 F. App'x 626, 633–34 (2019); (Doc. 28-3, at 5) ("Defendants' abrupt withdrawal deprived [Plaintiff] of effective representation at a critical juncture, resulting in disorganized trial preparation."); *id.* at 4 (stating Defendants "failed to meet the standard of care" without identifying the applicable standard of care); *id.* at 5 (stating "Defendants' legal representation fell below the standard of care expected in" the underlying litigation, without identifying what standards govern attorney withdrawal). This is especially true where Plaintiff's proffered expert did not consider either the effect of the withdrawal hearing conducted by the trial court in the underlying litigation, including Plaintiff's failure to object during such hearing. *See id.* at 1 (listing evidence considered by Plaintiff's expert).

Thus, Plaintiff has failed to put forth evidence creating a genuine dispute of material fact regarding whether Defendants committed malpractice by withdrawing from the underlying

litigation.[4] For this reason, and because Plaintiff has failed to identify record evidence of Uballe's collectability, the Court grants finds Plaintiff entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Summary Judgment (Doc. 48) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Plaintiff's Motion for Judicial Notice (Doc. 51), be and the same hereby is, DENIED; and it is

FURTHER ORDERED that Defendants' Motion to Deem Requests Admitted (Doc. 40), be and the same hereby is, DENIED AS MOOT; and it is

FURTHER ORDERED that Defendants' Motion in *limine* (Doc. 34), be and the same hereby is, DENIED AS MOOT; and it is

FURTHER ORDERED that Defendants' Motions to Strike (Doc. 38, 46), be and the same hereby are, DENIED AS MOOT.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: September 28, 2026

4. Because the Court resolves this alleged instance of malpractice on the absence of a breach, it need not resolve whether the "some evidence" or "case-within-a-case" standard for proximate causation applies.